

Aft Access in 2C
Cooler space (leading to 2D)

Forward Access Cover
in 2C Level
(leading to 2D)

EXHIBIT
11

tabbies

4TH  D

FORWARD ACCESS IN 2C
(LEADING TO 2D)

W. T. BHD

K. L

VFS-78
H=2650

HT2-5
FOR NO.2 C.H.

HATCH
OPENING/
COVER

VFS-80, C=50Q
H=2850
IN NO.1 F.O.T. (PA)

VFS-82
H=
IN

HR1-2
HR1-2    160    HR1-3
HR1-3    165

125    150    155

VFS-79, C=50Q
H=2850
IN NO.1 F.O.T. (SA)

VFS-81
IN

K. L.

AFT ACCESS IN 2C LEVEL
(LEADING TO 2D) IN COOLER SPACE

VFS-77, C=150
H=2690
UNDER 4TH DECK

530  00
350  20

125        130        135        140

HT2+6
FOR NO.2 C.H.

350

350



**TERMINAL·SHIPPING**
C O M P A N Y , I N C .

NETHERLANDS M/V "LUZON STRAIT" V.211
STATEMENT OF FACTS
WILMINGTON, DE

We, the undersigned, do hereby certify the following to be a true
and complete statement of facts pertaining to the discharge of a cargo
of 2,712 plts of Frozen Meat @ 5,088.915 mt at Wilmington Marine
Terminal, Wilmington, DE.

On completion the vessel sailed for Natal, Brazil.

---------------------------------------------------------------------

| | | |
|---|---|---|
| End of sea passage.....................................00.00 hrs | 6 NOV, 2002 |
| River pilot onboard....................................00.15 hrs | 6 NOV, 2002 |
| Alongside at Wilmington M.T. & first line ashore..05.34 hrs | 6 NOV, 2002 |
| All fast at berth #5 1/2 Wilmington m.t...........05.51 hrs | 6 NOV, 2002 |
| Commenced discharge....................................08.00 hrs | 6 NOV, 2002 |
| Completed discharge....................................14.45 hrs | 8 NOV, 2002 |
| USDA initial certification....................18.00/20.15 hrs | 8 NOV, 2002 |
| Departed berth & sailed.............................21.59 hrs | 8 NOV, 2002 |

---------------------------------------------------------------------

On berthing:                Taken in port:              On sailing:
FO  1558  MT                 FO  ----- MT                FO  1542.9 MT
DO    85  MT                 DO  ----- MT                DO    85   MT
FW   200  MT                 FW  ----- MT                FW   185   MT
Draft:                                                   Draft:
   FWD  7.3  M                                              FWD  5.6  M
   AFT  8.0  M                                              AFT  6.7  M

---------------------------------------------------------------------

**ACTIVITY**
* ALL DISCHARGE DONE WITH SHIP'S GEAR *

WEDNESDAY - NOVEMBER 6TH, 2002
==============================

HOLD NO.1A – 0800/0815    DISCHARGE BREAK-OUT PLTS FROZEN MEAT
              0815/0945    SLING & DISCHARGE EXTENDED BREAK-OUT PLTS
                                                          FROZEN MEAT
              0945/1000    S/B - MOUNT CAGE ON CRANE
              1000/1005    DISCHARGE PLTS FROZEN MEAT
              1005/1110    S/B - CAGE BROKEN
              1110/1200    DISCHARGE PLTS FROZEN MEAT
              1200/1300    MEAL BREAK
              1300/1525    DISCHARGE PLTS FROZEN MEAT
         B – 1525/1540    S/B - DISMOUNT CAGE FROM CRANE/OPEN TWEEN DECK
              1540/1545    DISCHARGE BREAK-OUT PLTS FROZEN MEAT
              1545/1555    S/B - MOUNT CAGE ON CRANE
              1555/1800    DISCHARGE PLTS FROZEN MEAT
              1800         GANG OFF

HOLD NO.3B – 0800/1200    DISCHARGE PLTS FROZEN MEAT
              1200/1300    MEAL BREAK
              1300/1515    DISCHARGE PLTS FROZEN MEAT
         C – 1515/1540    S/B - DISMOUNT CAGE FROM CRANE/OPEN TWEEN DECK
              1540/1550    DISCHARGE BREAK-OUT PLTS FROZEN MEAT
              1550/1610    S/B - MOUNT CAGE ON CRANE
              1610/1715    MACHINE BREAK-OUT/DISCHARGE PLTS FROZEN MEAT
              1715/1800    DISCHARGE PLTS FROZEN MEAT
              1800         GANG OFF

HOLD NO.4B – 0800/1200    DISCHARGE PLTS FROZEN MEAT
              1200/1300    MEAL BREAK
              1300/1345    DISCHARGE PLTS FROZEN MEAT
         C – 1345/1410    S/B - DISMOUNT CAGE FROM CRANE/OPEN TWEEN DECK
              1410/1415    DISCHARGE BREAK-OUT PLTS FROZEN MEAT
              1415/1435    S/B - MOUNT CAGE ON CRANE
              1435/1600    MACHINE BREAK-OUT/DISCHARGE PLTS FROZEN MEAT
              1600/1715    DISCHARGE PLTS FROZEN MEAT
              1715/1800    S/B - CAGE BROKEN (INTERMITENT DELAYS)
              1800         GANG OFF



EXHIBIT
_12_

1

NETH_LANDS, M/V "LUZON STRAIT" 211
STATEMENT OF FACTS
WILMINGTON, DE

THURSDAY - NOVEMBER 7TH, 2002
===============================

```
HOLD NO.1B - 0700/0725   S/B - CAGE BROKEN
             0725        GANG SHIFTS TO #2
             1430/1600   DISCHARGE PLTS FROZEN MEAT
             1600        GANG SHIFTS TO #2

HOLD NO.2C - 0725/1200   DISCHARGE PLTS FROZEN MEAT
             1200/1300   MEAL BREAK
             1300/1400   DISCHARGE PLTS FROZEN MEAT
         D - 1400/1410   S/B - DISMOUNT CAGE FROM CRANE/OPEN TWEEN DECK
             1410/1430   DISCHARGE BREAK-OUT PLTS FROZEN MEAT
             1430        GANG SHIFTS TO #1
             1600/1700   MACHINE BREAK-OUT/DISCHARGE PLTS FROZEN MEAT
             1700/1800   DISCHARGE PLTS FROZEN MEAT
             1800        GANG OFF

HOLD NO.3C - 0700/1200   DISCHARGE PLTS FROZEN MEAT
             1200/1300   MEAL HOUR
             1300/1430   DISCHARGE PLTS FROZEN MEAT
         D - 1430/1440   S/B - DISMOUNT CAGE FROM CRANE/OPEN TWEEN DECK
             1440/1450   DISCHARGE BREAK-OUT PLTS FROZEN MEAT
             1450/1540   SLING & DISCHARGE EXTENDED BREAK-OUT PLTS
                                                   FROZEN MEAT
             1540/1550   S/B - MOUNT CAGE ON CRANE
             1550/1630   MACHINE BREAK-OUT/DISCHARGE PLTS FROZEN MEAT
             1630/1800   DISCHARGE PLTS FROZEN MEAT
             1800        GANG OFF

HOLD NO.4C - 0700/1115   DISCHARGE PLTS FROZEN MEAT
         D - 1115/1125   S/B - DISMOUNT CAGE FROM CRANE/OPEN TWEEN DECK
             1125/1130   DISCHARGE BREAK-OUT PLTS FROZEN MEAT
             1130/1140   S/B - MOUNT CAGE ON CRANE
             1140/1200   MACHINE BREAK-OUT/DISCHARGE PLTS FROZEN MEAT
             1200/1300   MEAL BREAK
             1300/1330   MACHINE BREAK-OUT/DISCHARGE PLTS FROZEN MEAT
             1330/1405   DISCHARGE PLTS FROZEN MEAT
             1405/1440   S/B - CAGE BROKEN
             1440/1730   DISCHARGE PLTS FROZEN MEAT
             1730        GANG OFF
```

FRIDAY - NOVEMBER 8TH, 2002
===============================

```
HOLD NO.2D - 1100/1200   DISCHARGE PLTS FROZEN MEAT
             1200/1300   MEAL BREAK
             1300/1445   DISCHARGE PLTS FROZEN MEAT
             1445        GANG OFF

HOLD NO.3D - 0700/1100   DISCHARGE PLTS FROZEN MEAT
             1100        GANG SHIFTS TO #2
```

m.v. "Luzon Strait"

-------------------------------
MASTER M/V "LUZON STRAIT"                TERMINAL SHIPPING COMPANY, INC.
CAPTAIN MARTIJN S. MOBACH                AS AGENTS

**DELAWARE RIVER STEVEDORES, INC.**

PIER: Wilm Marine Term

DATE: ~~Thursday~~ Wednesday November 6, 02

LINE: _____

M/V: Luzon Strait

| HATCH | CRANE ID | ACTIVITY | TIME | | REMARKS |
|-------|----------|----------|------|------|---------|
| #1 | | Disc Cargo Breakout A-deck | 8a | 8¹⁵ | |
| | | Place Machine with spreader, presling over stowed Pallets | 8¹⁵ | 9⁴⁵ | |
| | | Rigg Cage on | 9⁴⁵ | 10 am | |
| | | Disc Cargo A-deck | 10 am | 10⁰⁵ | |
| | | Cage broke down | 10⁰⁵ | 11¹⁰ | |
| | | Disc Cargo A-deck | 11¹⁰ | 12N | |
| | | Disc Cargo A-deck | 1pm | 2³⁵ | |
| | | Cage off to opening | 2³⁵ | 3⁴⁰ | |
| | | Breakout Cargo – B-deck | 2⁴⁰ | 3⁴⁵ | |
| | | Cage on | 3⁴⁵ | 3⁵⁵ | |
| | | Disc Cargo B-deck | 3⁵⁵ | 6pm | |
| #3 | | Disc Cargo B-deck | 8am | 12N | |
| | | Disc Cargo B-deck | 1pm | 3¹⁵ | |
| | | Take Cage off | 3¹⁵ | 3⁴⁰ | |
| | | Breakout Cargo · C-deck | 3⁴⁰ | 3⁵⁰ | |
| | | Put Cage on | 3⁵⁰ | 4¹⁰ | |
| | | Machine Breakout C-deck | 4¹⁰ | 5¹⁵ | |
| | | Disc Cargo   C-deck | 5¹⁵ | 6pm | |
| #4 | | Disc Cargo B-deck | 8am | 12N | |
| | | Disc Cargo  B-deck | 1pm | 1⁴⁵ | |
| | | Rigg Cage (take cage off) | 1⁴⁵ | 2pm | |
| | | Breakout  C-deck | 2¹⁰ | 2¹⁵ | |
| | | Put Cage ON | 2¹⁵ | 2³⁵ | |
| | | Machine Breakout C-deck | 2³⁵ | 4pm | |
| | | Disc Cargo  C-deck | 4pm | 5¹⁵ | |
| | | Cage down (intermitent delays) | 5¹⁵ | 6pm | |
| HATCH | | EXCEPTIONS (SHOWN ABOVE) | TIME | | DAILY RECAPITUALTION |

DAILY RECAPITUALTION

| GROSS | DET | X/L | NET |
|-------|-----|-----|-----|
| | | | |

| S/T | O/T | M/H | NM/H |
|-----|-----|-----|------|
| | | | |

SUPT:

PORT
CAPT:

CHIEF
OFFICER:

EXHIBIT
13

m.v. "Luzon Strait"

## DELAWARE RIVER STEVEDORES, INC.

PIER: Wilm Marine Term

DATE: Thursday Nov 7, 2002

LINE: _____

M/V: Luzon Strait

| HATCH | CRANE ID | ACTIVITY | TIME | | REMARKS |
|---|---|---|---|---|---|
| #1 Rice | | Cage Breakdown | 7am | 7²⁵a | |
| | | Shift to #2 | | | |
| #2 | | Disc Cargo C-deck | 7²⁵a | 12n | |
| | | Disc Cargo C-deck | 1pm | 2pm | |
| | | Remove Cage | 2pm | 2¹⁰p | |
| | | Disc Breakout D-deck | 2¹⁰p | 2³⁰p | |
| | | Shift to #1 | | | |
| #1 | | Disc Cargo B-deck (Finish) | 2³⁰p | 4pm | |
| | | Shift to #2 | | | |
| #2 | | Machine Breakout D-deck | 4pm | 5pm | |
| | | Disc Cargo D-deck | 5pm | 6pm | |
| | | | | | |
| | | | | | |
| #3 Jackson | | Disc Cargo C-deck | 7am | 12n | |
| | | Disc Cargo C-deck | 1pm | 2³⁰p | |
| | | Remove Cage | 2³⁰p | 2⁴⁰p | |
| | | Disc Breakout D-deck | 2⁴⁰p | 2⁵⁰p | |
| | | Rigg Machine + disc Extended breakout | 2⁵⁰p | 3⁴⁰p | |
| | | Rigg Cage | 3⁴⁰p | 3⁵⁰p | |
| | | Machine Breakout D-deck | 3⁵⁰p | 4³⁰p | |
| | | Disc Cargo D-deck | 4³⁰p | 6pm | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| HATCH | EXCEPTIONS (SHOWN ABOVE) | TIME | DAILY RECAPITUALTION |
|---|---|---|---|
| | | | |

DAILY RECAPITUALTION

| GROSS | DET | X/L | NET |
|---|---|---|---|

| S/T | O/T | M/H | NM/H |
|---|---|---|---|

SUPT:

PORT CAPT:

CHIEF OFFICER:

## DELAWARE RIVER STEVEDORES, INC.

PIER: Wilm Marine Term    DATE: Thursday Nov 7, 2002

LINE: _____    M/V: Luzon Strait

| HATCH | CRANE ID | ACTIVITY | TIME | | REMARKS |
|---|---|---|---|---|---|
| #4 | spotter | Disc Cargo C-deck | 7am | 11¼ | |
| | | Remove Cage | 11¼ | 11²⁵ | |
| | | Disc Breakout D-deck | 11²⁵ | 11⁴⁰ | |
| | | Rigg Cage | 11²⁰ | 11⁴⁰ | |
| | | Machine Breakout D-deck | 11⁴⁰ | 12¹ | |
| | | Machine Breakout D-deck | 1pm | 1³⁰ | |
| | | Disc Cargo D-deck | 1³⁰pm | 2⁰⁵pm | |
| | | Cage Breakdown | 2⁰⁵ | 2⁴⁰ | |
| | | Disc Cargo D-deck (Finish) | 2⁴⁰pm | 5³⁰pm | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| HATCH | EXCEPTIONS (SHOWN ABOVE) | TIME | DAILY RECAPITUALTION |
|---|---|---|---|

| GROSS | DET | X/L | NET |
|---|---|---|---|
| | | | |

| S/T | O/T | M/H | NM/H |
|---|---|---|---|
| | | | |

SUPT:

PORT
CAPT:

CHIEF
OFFICER:

m.v. "Luzon Strait"

### DELAWARE RIVER STEVEDORES, INC.

PIER: Wilm Marine Ter          DATE: Friday Nov 8, 2002

LINE: _____          M/V: Luzon Strait

| HATCH | CRANE ID | ACTIVITY | TIME | | REMARKS |
|-------|----------|----------|------|------|---------|
| #3 | | Disch Cargo D-deck | 7am | 11a | |
| | | | | | |
| | | | | | |
| | | | | | |
| #2 | | Disch Cargo D-deck | 11a | 12n | |
| | | | 1pm | 2⁴⁵p | |
| | | Guam Dead Time | 2⁴⁵p | 3p | |
| | | | | | |

| HATCH | EXCEPTIONS (SHOWN ABOVE) | TIME | | DAILY RECAPITUALTION |
|-------|--------------------------|------|------|----------------------|

DAILY RECAPITUALTION

| GROSS | DET | X/L | NET |
|-------|-----|-----|-----|
| | | | |

| S/T | O/T | M/H | NM/H |
|-----|-----|-----|------|
| | | | |

SUPT: _____
PORT: _____
CAPT: _____
CHIEF _____
OFFICER: _____

m.v. "Luzon Strait"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

JOHN TURNER,                    ) CIVIL ACTION
                                )
                                )
            Plaintiff,          )
                                )
       -vs-                     )          COPY
                                )
SEATRADE GRONIGNER, B.V.,       )
                                )
                                )
            Defendant.          ) NO. 04-CV-0936

- - -

Oral deposition of GREGORY A. RINGGOLD, taken in the law offices of PALMER, BIEZUP & HENDERSON, Public Ledger Building, Suite 956, 620 Chestnut Street, Philadelphia, Pennsylvania 19106, on Friday, March 11, 2005, beginning at approximately 11:35 a.m., before Joseph J. Pignatelli, a Registered Professional Reporter and Commissioner in and for the Commonwealth of Pennsylvania.

- - -

ESQUIRE DEPOSITION SERVICES
1880 John F. Kennedy Boulevard
15th Floor
Philadelphia, Pennsylvania 19103
(215) 988-9191

EXHIBIT
14

1   APPEARANCES:

2

        FREEDMAN and LORRY, P.C.

3       BY: STANLEY B. GRUBER, ESQUIRE

        400 Market Street, Suite 900

4       Philadelphia, Pennsylvania 19106

        (215) 931-2510

5       -- Representing the Plaintiff

6

7       PALMER, BIEZUP & HENDERSON

        BY: RICHARD Q. WHALEN, ESQUIRE

8       Public Ledger Building, Suite 956

        620 Chestnut Street

9       Philadelphia, Pennsylvania 19106

        (215) 625-9900

10      -- Representing the Defendant

11

                    - - -

12

13

14

15

16

17

18

19

20

21

22

23

24

```
 1                    (It is hereby stipulated and agreed

 2            by and between counsel for the respective

 3            parties that signing, sealing,

 4            certification, and filing are hereby

 5            waived; and that all objections, except as

 6            to the form of the question, are reserved

 7            until the time of trial.)

 8                         -  -  -

 9                 GREGORY A. RINGGOLD, after having

10            been first duly sworn, was examined and

11            testified as follows:

12                         -  -  -

13                       EXAMINATION

14                         -  -  -

15   BY MR. WHALEN:

16   Q.      Mr. Ringgold, can you state your full name,

17   for the record, please.

18   A.      Gregory A. Ringgold.

19   Q.      What does the A stand for?

20   A.      Alexis.

21   Q.      Mr. Ringgold, have you ever given your

22   deposition before?

23   A.      No.

24   Q.      My name is Richard Whalen.  I represent the
```

GREGORY A. RINGGOLD

1  out?

2  A.      Yes.

3  Q.      When you went out, did you hold onto the

4  access cover to help yourself get out of the

5  hatch?

6  A.      No.

7  Q.      How did you get out?

8  A.      Put my arms on the side, raised myself back

9  up there and sat down and got out.

10  Q.      And you didn't have any trouble doing that?

11  A.      No.

12  Q.      And when you came out that last time, the

13  access cover was obviously open; is that correct?

14  A.      Yes.

15  Q.      Was it open in like a ninety degree

16  position like this or partially or more than

17  ninety degrees?

18  A.      I don't know.

19  Q.      However amount it was open, you didn't have

20  any trouble getting out of it?

21  A.      No.

22  Q.      Then who was right behind?  Was there

23  anyone right behind you on the ladder?

24  A.      There were only two people down in there

1    when I left.

2    Q.    And who was that?

3    A.    That was John Turner and Blue.

4    Q.    Mr. Grinnell?

5    A.    Mr. Grinnell.

6    Q.    When you came out that last time that you

7    just described, did you look at the securing

8    device how that cover was held open?

9    A.    No.

10   Q.    Did you have any idea who opened that

11   cover?

12   A.    No.

13   Q.    Who secured it, if it was secured?

14   A.    No.

15   Q.    What was your first notice of Mr. Turner's

16   accident?

17   A.    I was up on the next deck and I heard them

18   talking about it.  I was on B deck when I heard

19   it, but taking off my coat and things, getting my

20   bag.

21   Q.    What did you hear?

22   A.    I just heard them talk about the hatch

23   cover come back on John's leg, but I don't know

24   what else happened.

GREGORY A. RINGGOLD

1   Q.       Have you spoken to Mr. Turner since the

2   accident about how it occurred?

3   A.       No.

4   Q.       Did you meet with Mr. Gruber before coming

5   here today to discuss this accident?

6   A.       Yes.

7   Q.       Did he show you some photographs and ask

8   you what happened?

9   A.       Yes.

10  Q.       Were the other witnesses there with you

11  when that happened?

12  A.       Yes.

13  Q.       Now, when you came out onto the C deck that

14  last time, did you ever see any ship's personnel

15  or crew members in that area?

16  A.       No.

17  Q.       At any time that day did you, either on the

18  D or C levels, ever see any ship's crew or ship's

19  personal there?

20  A.       On which, what did you say?

21  Q.       On either the D level or C level that day?

22  A.       No.

23  Q.       Never saw anyone from the ship's crew?

24  A.       No.

GREGORY A. RINGGOLD

1  Q.      Did you ever have any conversation yourself

2  with any member of the ship's crew that day?

3  A.      Yes.

4  Q.      Who did you speak with?

5  A.      That was on top of it on the main deck

6  where they was hooking up the power to move the

7  elevator.

8  Q.      What was your conversation?

9  A.      We had to hook up things for them or move

10  something out of the way so they could get to the

11  boxes that held the pallets.

12  Q.      And when was that?

13  A.      In the morning.

14  Q.      Any other discussions?

15  A.      No.

16  Q.      Let me check my notes.

17          Now, as a longshoreman with a

18  significant amount of experience, you regularly on

19  a daily basis go up and down and fix ladders like

20  the one that you just described through access

21  ways like the one you described?

22  A.      Yes.

23  Q.      When you were in the area of the top of

24  this ladder where the access was, what you show in

EXHIBITS

1    D-5 when you got up to the C deck level with the

2    access cover lid, were there any handles on either

3    side or in front of this access --

4    A.      From B to C?

5    Q.      Right.

6    A.      No.

7    Q.      That was just the access cover itself?

8    A.      That's it.

9    Q.      Do you know whether there was any other

10   ladder or a way to get out of the D deck other

11   than the one you drew in on D-5?

12   A.      No.

13   Q.      In your experience, is it typically an

14   access at the forward and aft ends, the two

15   methods, two ways to get in and out of the hatch?

16   A.      This particular hatch or any hatch?

17   Q.      Most hatches.

18   A.      Yes.

19   Q.      Do you know whether there was another

20   ladder in this hatch?

21   A.      No.

22   Q.      Did you ever ask anyone whether --

23   A.      There was no one around to ask.

24   Q.      But you were not aware of one?

GREGORY A. RINGGOLD

E
X
H
I
B
I
T
S

A.      No.

        MR. WHALEN:  Those are all the
questions I have.  Thank you very much.

                - - -

           (Witness excused.)

                - - -

        (Whereupon, the deposition was
concluded at 12:05 p.m.)

                - - -

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

JOHN TURNER,                    ) CIVIL ACTION
                                )
                                )
            Plaintiff,          )
                                )
      -vs-                      )
                                )
SEATRADE GRONIGNER, B.V.,       )
                                )
                                )
            Defendant.          ) NO. 04-CV-0936

- - -

 Oral deposition of WILLIAM HENRY GRINNELL, JR., taken in the law offices of PALMER, BIEZUP & HENDERSON, Public Ledger Building, Suite 956, 620 Chestnut Street, Philadelphia, Pennsylvania 19106, on Friday, March 11, 2005, beginning at approximately 11:00 a.m., before Joseph J. Pignatelli, a Registered Professional Reporter and Commissioner in and for the Commonwealth of Pennsylvania.

- - -

ESQUIRE DEPOSITION SERVICES
1880 John F. Kennedy Boulevard
15th Floor
Philadelphia, Pennsylvania 19103
(215) 988-9191

EXHIBIT
15

1  APPEARANCES:

2

      FREEDMAN and LORRY, P.C.

3        BY: STANLEY B. GRUBER, ESQUIRE

      400 Market Street, Suite 900

4        Philadelphia, Pennsylvania 19106

      (215) 931-2510

5        -- Representing the Plaintiff

6

7        PALMER, BIEZUP & HENDERSON

      BY: RICHARD Q. WHALEN, ESQUIRE

8        Public Ledger Building, Suite 956

      620 Chestnut Street

9        Philadelphia, Pennsylvania 19106

      (215) 625-9900

10       -- Representing the Defendant

11

            -  -  -

12

13

14

15

16

17

18

19

20

21

22

23

24

WILLIAM HENRY GRINNELL, JR.

A.      Right.

Q.      Did you come down to get to the D level on the ladder that's indicated on D-4?

A.      Right.

Q.      To get to that ladder, was there an access cover that was either open or closed that you had to pass through to get to that ladder to get to the D deck?

A.      Yes.

Q.      Was that access cover open or closed when you personally came to it to go down into the D level?

A.      It was open.

Q.      When you got to that point, could you tell how that access cover was secured?

A.      No.

Q.      Did you hold onto that access cover as support as you went down the ladder to the D level?

A.      Yes.

Q.      And when you did that, did it support your weight; in other words, it didn't fall down on you?

A.      No.

**WILLIAM HENRY GRINNELL, JR.**

Q.      It did not?

A.      No.

Q.      And did you use the same ladder and cover to exit or get out of the D level when your work was complete on the date of the accident?

A.      Actually, yes.

Q.      Did you come out before or after Mr. Turner?

A.      After.

Q.      When you came out after, did you hold onto the same access cover on the way out?

A.      Actually you don't hold it, you pull up on it, and actually Sean had told me beforehand that the latch, there was something wrong with it on the way out.  So me, actually I was curious and it popped loose and I looked at it.

Q.      When you said you grabbed it and it popped loose --

A.      Then you grabbed it pulling up, you climb up, so you pull up, you're pulling up on it.

Q.      When you came up that ladder and you were pulling up on it, as you say, were you facing the cover or was the cover to your right or what?

A.      Here.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

JOHN TURNER,              ) CIVIL ACTION

)

)

       Plaintiff,    )

    -vs-           )

)

SEATRADE GRONIGNER, B.V.,  )

)

)

       Defendant.    ) NO. 04-CV-0936

COPY

- - -

      Oral deposition of SEAN BRADY, taken
in the law offices of PALMER, BIEZUP & HENDERSON,
Public Ledger Building, Suite 956, 620 Chestnut
Street, Philadelphia, Pennsylvania 19106, on
Friday, March 11, 2005, beginning at approximately
10:10 a.m., before Joseph J. Pignatelli, a
Registered Professional Reporter and Commissioner
in and for the Commonwealth of Pennsylvania.

- - -

ESQUIRE DEPOSITION SERVICES
1880 John F. Kennedy Boulevard
15th Floor
Philadelphia, Pennsylvania 19103
(215) 988-9191

EXHIBIT
16

APPEARANCES:

FREEDMAN and LORRY, P.C.
BY: STANLEY B. GRUBER, ESQUIRE
400 Market Street, Suite 900
Philadelphia, Pennsylvania 19106
(215) 931-2510
-- Representing the Plaintiff

PALMER, BIEZUP & HENDERSON
BY: RICHARD Q. WHALEN, ESQUIRE
Public Ledger Building, Suite 956
620 Chestnut Street
Philadelphia, Pennsylvania 19106
(215) 625-9900
-- Representing the Defendant

- - -

**SEAN BRADY**

1              (It is hereby stipulated and agreed

2         by and between counsel for the respective

3         parties that signing, sealing,

4         certification, and filing are hereby

5         waived; and that all objections, except as

6         to the form of the question, are reserved

7         until the time of trial.)

8                         - - -

9              SEAN BRADY, after having been first

.0         duly sworn, was examined and testified as

.1         follows:

12                         - - -

13                     EXAMINATION

14                         - - -

15    BY MR. WHALEN:

16    Q.      Mr. Brady, my name is Richard Whalen.   I

17    represent the owners of the ship called the LUZON

18    STRAIT.   Those owners have been sued by John

19    Turner in connection with an accident he had on

20    November eighth, 2002.

21              You have been identified as a witness

22    or a potential witness in the case, and that's the

23    reason why you were subpoenaed on come here today.

24              What I'm going to do is ask you some

1    questions about your recollection of what occurred

2    on November eighth, and if you don't understand

3    any of my questions, just let me know and I'll

4    rephrase them.

5              If you need a break at any time, just

6    let us know and we can break, to use the men's

7    room or get a breath of fresh air or whatever.  I

8    don't anticipate the deposition being very long.

9              The one thing you should remember is

0    when giving a response, it has to be a verbal

1    response, and try to remember to say yes rather

2    than uh-uh and nodding your head and things like

3    that, so the court reporter can get it down.

4    A.      Okay.

5    Q.      State your full name for the record,

6    please.

7    A.      Sean D. Brady.

8    Q.      And what is your present home address, Mr.

9    Brady?

0    A.      1104 Melrose Place, Newark, Delaware.

1    Q.      What is the ZIP code there?

2    A.      19702.

3    Q.      And your home phone number?

4    A.      Area code 302-226-7481.

SEAN BRADY

1  Q.      So at that time, what did you do when you

2  got to him?

3  A.      When I got to him, I thought he was joking,

4  so I laugh at him a little bit, I thought he was

5  joking around.  Then I pulled the lid off of him

6  and I grabbed him up and said, come on, let's get

7  out of here, it's cold.  I tried to fasten the

8  lid, it wouldn't lock.

9  Q.      Let's go back for a second.  You had

10  indicated in your earlier testimony, I believe,

11  that you saw him coming up and he grabbed onto the

12  access lid with both hands to get himself up.

13  A.      He had no choice.

14  Q.      Then it came down on him?

15  A.      Yes.

16  Q.      Then you came to his assistance, and then

17  you said you pulled the lid up and tried to lock

18  it but it wouldn't lock?

19  A.      No, because the pin was stressed out.

20          MR. WHALEN:  Let's mark this as the

21          next exhibit.

22                  - - -

23          (Whereupon, a photograph was marked

24          for identification as Exhibit D-3.)

SEAN BRADY

1                              - - -

2     BY MR. WHALEN:

3     Q.         We have marked a color photocopy of a

4     photograph as D-3.  And looking at that, was that

5     the kind of pin, you see the red, kind of hook and

6     eye situation there for securing it?  Was that the

7     kind of pin that there was or --

8     A.         That's the kind pin it was, I wasn't in

9     there, it wasn't going in.

10    Q.         What do you mean, it just wouldn't fit in?

11    A.         It would go but it was already bent

12    outwards, it wouldn't hold it secure.

13    Q.         So you're saying that hook of the hook and

14    eye had straightened out some.  Can you draw on

15    another piece of paper what it looked like to you?

16    A.         I'm not exactly sure, but I know I put the

17    pin in there, it wouldn't hook up.  Held it up

18    with my hand, helped him out, let's go because

19    it's cold, it was five below zero down there.

20               All I know is I tried to put it in

21    there, it wouldn't go.  When he came up, we got

22    him out.  Blue went to grab a hold onto him.

23               I said, don't do it.  He tried it,

24    and it wouldn't go, it almost came back on him.

SEAN BRADY

1   We got out of the hold.

2   Q.      Let's hold up for a second there.  You said

3   Blue came out, that's William Grinnell?

4   A.      Yes.

5   Q.      So when you were standing there, you

6   couldn't get the pin back in and you were holding

7   it open, and then Mr. Grinnell came up the ladder?

8   A.      Yes.

9   Q.      Then how did he get out?

10  A.      I helped him out of the hold.

11  Q.      But you hadn't put the pin back in?

12  A.      I tried to, it wouldn't stay in there, it

13  wouldn't go in.  It would go in, but it's coming

14  right back out.

15  Q.      So did he try to pull on it and did it pop

16  out again?

17  A.      A leg pulled on it.  I held it up so he

18  come up and said, I'm going to put all my weight

19  on it, you don't have to hold it, let's go.

20  Q.      Then the three of you left?

21  A.      Yes.

22  Q.      And then was Mr. Grinnell the last one out?

23  A.      No, I was the last one out off of C deck.

24  Except for John up the ladder because he said he

1   was a little sore.

2   Q.      Now, did you witness anyone else come up

3   through that accessway that we have drawn on D-2

4   and which is shown on D-3, the color photocopy of

5   the photograph, did you see anybody come up that

6   accessway before Mr. Turner?

7   A.      The whole gang that worked that day that

8   was working the floor had to come up and down the

9   ladder.

10  Q.      So then just prior to Mr. Turner coming

11  out?

12  A.      Several people had already been up and

13  down.

14  Q.      Several people had already been up and

15  down.

16  A.      Up and down.

17  Q.      But some people had just left the hatch

18  before then; in other words, there were more than

19  three people working in that D deck, more than

20  three people working in the D deck?

21  A.      Yes.

22  Q.      When you were in the area of this access

23  hatch lid on C deck and the accident occurred,

24  were there any crew members or anybody else other

SEAN BRADY

1  than longshoremen in that area at the time?

2  A.      No, just longshoremen.

3  Q.      At any time when you went down this ladder

4  that you had to use to get from B to C, from A to

5  B to C and whatever levels you did, did you ever

6  experience any problems with the access lids or

7  the ladders?

8  A.      Probably, I just wasn't paying attention to

9  it, did my job, it was cold down there.

10  Q.      Do you have any specific recollection of

11  having any problems with any of other access lids

12  or ladders?

13  A.      No. I just went to work.

14  Q.      And before this accident, did anyone

15  complain to you or mention that this particular

16  access lid, which was circled on D-2 which was

17  involved in Mr. Turner's accident, was anyone

18  complaining about that or saying it was a problem

19  before the accident?

20  A.      No, not to my recollection, no.

21  Q.      Then after the accident, did you complain

22  to anybody about that access lid or the securing

23  device that you tried to put back in after the

24  accident?

SEAN BRADY

1   A.      I went and spoke to the superintendent and

2   told him.

3   Q.      And who was that superintendent?

4   A.      Cliff, I don't know Cliff's last name,

5   Q.      Cliff Lasch?

6   A.      I guess.

7   Q.      And that was after the accident?

8   A.      Yes.

9   Q.      And when you said the three of you were on

10  C deck after the accident, you said it's cold,

11  let's get out of here, that was because work was

12  over and you guys were done for the day?

13  A.      Yes.

14  Q.      Now, during this time period, you know,

15  right after the accident occurred, did Mr. Turner

16  say anything to you about how the accident

17  occurred or anything of that nature?

18  A.      Well, I got over there, I thought he was

19  joking, looked at him.  It looked like we were

20  laughing about something anyway before it happen,

21  we were laughing about something.  When he went

22  down I thought he was joking.  Come on, let's get

23  out of here.  He's like I don't believe this, he

24  couldn't believe the door came back on him.  Hold

ELEVATOR

Button

OK← Mr. Brady

Direction of Lowering/rulers by Tal

Access lid

Pier

EXHIBIT
5-2

11-01-04

FREEDMAN AND LORRY, P.C.
BY: STANLEY B. GRUBER, ESQUIRE
IDENTIFICATION NO. 22954
400 Market Street, Suite 900
Philadelphia, PA 19106
(215) 931-2510
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JOHN TURNER                    : CIVIL ACTION
                               :
        vs.                    :
                               :
SEATRADE GRONINGERN B.V.       : NO. 04-cv-0936

PLAINTIFF'S ANSWERS TO GOLDEN HELM SHIPPING CO., S.A.'s
INTERROGATORIES

1.    On November 8, 2002, at approximately 2:45 P.M., Plaintiff was climbing out of
      the D deck level of the aft end of the No. 2 hatch of the vessel on an escape
      ladder.  In order to assist himself in getting up the ladder to the next level, he
      grabbed onto the top of the hatch lid.  However, the hatch lid was not secured and
      it fell on Plaintiff striking him and "pinning" him in the area of his waist.  Sean
      Brady, fellow longshoreman, assisted Plaintiff in raising the hatch lid and
      climbing onto the C deck level and off the ship.

2.    Sean Brady, longshoreman
      Joseph Selvaggi, longshoreman
      Anthony Frasier, longshoreman
      Grinnel Williams, longshoreman
      Ryan Anderson, longshoreman
      Gregory Ringgold, longshorman

3.    See answer to Interrogatory 1.  The hatch lid in question was not adequately
      secured and did not contain an adequate device to safely secure it in a raised
      position.

4.    Sean Brady, longshoreman
      Joseph Selavaggi, longshoreman
      Anthony Frasier, longshoreman
      Grinnel Williams, longshoreman



EXHIBIT
17

Ryan Anderson, longshoreman
Gregory Ringgold, longshoreman
Cliff Lasch, superintendent
Employees, servants, agents and/or workmen of defendant Seatrade Groningen
B.V.

5.   DRS Supervisor's Accident Investigation dated November 8, 2002
     Crew List
     Deck Log
     Stowage Plan
     DRS Daily Work Reports and Palletized Ship Reports
     Ship's Port Log for November 6 through 8, 2002

6.   Plaintiff did not make any complaint regarding the condition which caused his
     accident because he was unaware that a dangerous condition existed prior to the
     accident.

7.   Cliff Lasch may have inspected the area of the accident scene for the purpose of
     taking photographs shortly after the accident.

8.   The hook and eye device utilized to hold the hatch lid in an open position was
     defective and the hatch lid was not firmly secured in an open position. The
     condition was latent in that the hatch lid appeared to be secured in an open
     position.

9.   Defendant knew or should have known that an unsafe condition existed since it
     was the responsibility of the ship's crew to make sure that such hatch lid was
     firmly secured in an open position to enable the longshoremen to have safe access
     in and out of the cargo hold in question and the hatch lid and securing device was
     ship's gear.

10.  See answer to interrogatories 3 & 8. In addition, it appeared that the hatch lid was
     secured in an open position because it was open and leaning back against the
     bulkhead at the time of the accident.

11.  Not applicable

12.  Plaintiff injured his neck and low back in a motor vehicle accident on May 25,
     1999. Plaintiff received treatment from his family doctor, Tae Sup Song, M.D.
     and attended physical therapy at Dynamic Physical Therapy. Plaintiff was out of
     work until October 4, 1999.

13.  None known to Plaintiff

14.  Not applicable

15. Plaintiff climbed in and out of the D deck three times prior to the accident and had not experienced any problems during his prior use.

16. The precise period of time is not presently known.

17. Sean Brady, longshoreman
Joseph Selavaggi, longshoreman
Anthony Frasier, longshoreman
Grinnel Williams, longshoreman
Ryan Anderson, longshoreman
Gregory Ringgold, longshoreman
Cliff Lasch, superintendent

18. Past lost wages – approximately $138,121.54 based on 101 weeks of disability at approximately $1,367.54 per week, and continuing. In addition, the plaintiff's medical bills total $41,309.65

19. Plaintiff filed a claim for underinsured motorist as a result of the 1999 motor vehicle accident. Plaintiff's attorney filed for an arbitration in the Superior Court of Wilmington. The claim was subsequently settled for Plaintiff's policy limits. Plaintiff was represented by L. Vincent Ramunno of Ramunno & Ramunno, 903 W. French Street, Wilmington, DE.

20. Objected to. This Interrogatory calls for plaintiff to reach a legal conclusion which he is not competent to reach.

FREEDMAN AND LORRY, P.C.

BY:_____
Stanley B. Gruber
Attorneys for Plaintiff

## VERIFICATION

JOHN TURNER hereby states that he is plaintiff in the within action and verifies that the statements made in the foregoing Answers to Interrogatories are true and correct to the best of his knowledge, information and belief. The undersigned understands that the statements therein are made subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities.

_____
JOHN TURNER

DATE: _10 – 2 8 – 04_

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JOHN  TURNER           :

                              :              CIVIL ACTION

                              :

      v.                        :              NO. 04-cv-0936

                              :

SEATRADE GRONINGEN B.V.      :

## DEFENDANT'S INTERROGATORIES
## DIRECTED TO PLAINTIFF JOHN TURNER

Defendant, Seatrade Groningen B.V.[1], by and through its undersigned attorneys, Palmer

Biezup & Henderson LLP, hereby propounds the following interrogatories to be answered under

oath by plaintiff John Turner within thirty (30) days of service under and pursuant to Rule 33 of

the Federal Rules of Civil Procedure.

These interrogatories are to be deemed continuing so as to require further answer from

now until the time of trial, without further notice, if you learn further information called for

herein.

These interrogatories are addressed to you as a party to this action, and your answers shall

be based upon the information known to you, your attorneys, or other representatives.

I.       Definitions

---

[1] The parties anticipate that B.V. Shipping Company Luzon Strait (Groningen) will be substituted as the proper defendant in this matter by way of stipulation and, therefore, these interrogatories shall be considered to have also been propounded by B.V. Shipping Company Luzon Strait (Groningen) once the substitution becomes effective.

A. "You" or "your" shall mean the person or entity to whom these interrogatories are addressed; or any agent or person acting on your behalf.

B. "Person" or "persons" shall mean any natural individual or any corporation, firm, partnership, proprietorship, association, entity, joint venture, or other business organization.

C. "Document" shall mean any original written, typewritten, handwritten, printed or recorded material as well as all tapes, non-duplicate copies and transcripts, now or at any time in your possession, custody or control. Without limitation of the term "control" as used in the preceding sentence, a document is deemed to be in your control if you have the right to secure the document or a copy thereof from another person, of public or private entity which has actual possession thereof. If a document was, but is no longer in your possession or subject to your control, state what disposition was made of it, by whom and the date or dates, or approximate date or dates, on which such disposition was made and why.

D. "Complaint" includes the original Complaint filed by plaintiff(s) as well as all subsequently filed Amended Complaints.

II. <u>Instructions</u>

In responding to these interrogatories, plaintiff shall follow the instructions set forth below:

A. The person to whom these interrogatories are addressed shall answer the interrogatories below under oath within thirty (30) days of service hereof, or such shorter time as the Court may order.

B. In answering these interrogatories, each answering party shall furnish all information available at the time of answering.

PBH: 170428.1

2

C.      If you do not answer an interrogatory in whole or in part because of a claim of privilege, set forth the privilege claimed, identify the facts upon which you rely to support the claim of privilege, and identify all documents for which such privilege is claimed.

D.      When a natural person is required to be identified, state his name, business and/or residence address.

E.      "Or" shall be construed either conjunctively or disjunctively to bring within the scope of these interrogatories any information which might otherwise be construed as outside their scope.

F.      The singular includes the plural, and vice versa, the masculine defines the feminine and neuter genders.  The past tense includes the present time where the meaning is not distorted by a change of time.

G.      When and if the responding party to these interrogatories answers any interrogatory with the phrase "see medical records" or like answer, then with respect to such medical records, identify the specific record, the type of document, its date and title and its present location.

## Interrogatories

1.      Describe in detail how the accident which is the subject of your Complaint occurred including, but not limited to, the events leading up to and following the alleged accident.

2.    Identify all witnesses to your alleged incident, including all persons who were within sight or hearing of the alleged incident, specifying locations and observations.

3.    Set forth in detail all facts which you contend support the allegations contained in Paragraph 7 of Plaintiff's Complaint.

4.    Identify all persons which you contend have knowledge and/or information which supports the allegations contained in Paragraph 7 of Plaintiff's Complaint.

5.    Identify all documents which you contend supports the allegations contained in Paragraph 7 of Plaintiff's Complaint.

6.    In the event that plaintiff or his employer ever complained to defendant or its representatives about the condition which plaintiff claims caused his alleged incident, state when and to whom such complaint was made along with the substance of the Complaint.

7.    Identify all persons of which you are aware who inspected the area where you contend the plaintiff's incident occurred.

8.    Describe in detail any unsafe condition, defect and/or hazard which you contend was a proximate cause of the accident which is subject to your Complaint and indicate whether the condition was latent or obvious.

9.    In the event that you allege that defendant had notice of any unsafe condition, defect and/or hazard that plaintiff may have encountered and was involved with plaintiff's incident, state the facts that you allege establish that defendant had notice of such unsafe condition, defect and/or hazard.

10.    In the event that you allege that the unsafe condition, defect and/or hazard that plaintiff may have encountered was not open and obvious to longshoremen, state the facts that establish that the unsafe condition, defect and/or hazard was not open and obvious.

11.     In the event that you contend that the unsafe condition, defect and/or hazard was an obvious danger, state all facts which you claim support said contention.

12.     With respect to prior injuries and/or prior medical treatment to the areas of your body you claim you injured in the incident which is the subject matter of your Complaint, please identify all such prior injuries/treatment and identify the doctors and/or other medical professionals who treated you together with the date(s) of such prior injuries/treatment. (The word "prior" in this interrogatory means before the accident which is the subject matter of your Complaint).

13.     Set forth in detail the substance of any and all communications (written or oral) you are aware of with representatives of defendant concerning the condition which you claim caused your alleged incident.

14.     In the event you have ever been convicted of a crime, please set forth the case name, court, civil action number/court term and number, the names and addresses of the attorneys involved and the crime for which you were convicted.

PBH: 170428.1

15.     With regard to the access cover, opening and ladder you claim were involved in your alleged accident, state how many times you used said cover, opening and ladder before your alleged accident and whether you experienced any problems during your prior use.

16.     With regard to the condition you contend caused your alleged accident, state the period of time this condition existed prior to the incident which is the subject matter of the Complaint and the factual basis for your answer.

17.     Identify all employees of the stevedore (including supervisors, foremen, ship bosses and longshoremen) who used or inspected the access cover, opening and ladder in question before the accident which is the subject matter of the Amended Complaint.

18.     Set forth in detail any economic losses (including medical expenses, lost wages, etc.) that you claim you suffered as a result of the incident which is the subject matter of your Complaint.

PBH: 170428.1

7

19.    Set forth the case name, court term and number and the names and addresses of the attorneys who entered an appearance in all lawsuits you have filed in your lifetime for losses and/or damages you claimed to have sustained as the result of personal injuries.

20.    State whether or not, at the time of your incident, you and your employer complied with the OSHA Safety and Health Regulations for longshoring 29 C.F.R.§1918.1 *et seq.* and, if so, what in particular you and your employer did to comply with said regulations.

PALMER BIEZUP & HENDERSON LLP

By: _____

Michael B. McCauley
Delaware I.D. No. 2416
Attorneys for Defendant
Seatrade Groningen B.V.

1223 Foulk Road
Wilmington, DE 19803
Tele: (302) 594-0895
Fax:  (302) 478-7625

Dated: ____10/12/04____

PBH: 170428.1

8

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JOHN TURNER                          :
                                     :          CIVIL ACTION
                                     :
        v.                           :          NO. 04-cv-1057
                                     :
                                     :
SEATRADE GRONINGEN B.V.              :

### CERTIFICATE OF SERVICE

     The undersigned hereby certifies that a true and correct copy of the within Interrogatories directed to Plaintiff John Turner was served on the below-listed counsel by first-class mail, postage prepaid, on the date appearing below:

         Stanley B. Gruber, Esquire
         Freedman and Lorry, P.C.
         400 Market Street
         Suit 900
         Philadelphia, PA 19106-2509

         Stephen B. Potter, Esquire
         Potter Carmine Leonard & Aaronson, P.A.
         840 North Union Street
         P.O. Box 514
         Wilmington, DE 19899

         PALMER BIEZUP & HENDERSON LLP

By: _____
         Michael B. McCauley
         Delaware I.D. No. 2416

Dated: _10/11/04_

PBH: 170428.1



Shipping Inspectorate
./O Box                      's Gravenweg 665
3009 AP Rotterdam          3065 SC Rotterdam
Tel:   010 - 2668600
Fax:   010 - 2022320

**Inspection report**

Form A    (Ships file)

| Name ship / yard / company * | | ID no. | | Page | of |
|---|---|---|---|---|---|
| **LUZON STRAIT/CSBC** | | | | **1** | **6** |

| Callsign / Yard no. * | Classification society | Type of ship | Report seq. No. |
|---|---|---|---|
| **/ 730** | **BV** | **REEFER/CONTAINER** | **1** |

| Date of inspection | Place of inspection | Date last inspection |
|---|---|---|
| **14,20-08-2002** | **KEELUNG (TAIWAN)** | |

☐ HSSC Certified   ☐ Convent certified   ☐ Non Solas   ☐ New building   ☒ Flag in   ☐ Conversion   ☐ Other

**Inspection carried out**

| | Date | Travel | Work | Admin |
|---|---|---|---|---|
| • CO2 function test | | | | |
| • Emergency stops ventilation/pumps | | | | |
| • ER alarms in engineers cabins | | | | |
| • GEA | | | | |
| • ER deadmans system | | | | |
| • Rescue boat davit function test | | | | |
| 20-08 | | | | |
| • EM. Gen. Test | | | | |
| • EFP test | | | | |
| • EM lighting | | | | |
| • ER Firedamper remote control | | | | |
| • Bridge watchclock | | | | |
| • CO2 pressure test pilotlines (working pressure only i.e. 50 bar) | | | | |

| Code | Deficiency | Action | Ranking |
|---|---|---|---|
| | (Remarks made on board LOMBOK STRAIT) | | |
| | 1. Purifier room CO2 warning plate to complete on entrance door | 18 | |
| | 2. CO2 alarm in pur.room missing ??? | | |
| | 3. n.a. o/b Luzon strait | | |
| | 4. No CO2 alarm + Gen alarm in brine pump room | | |
| | 5. Various signs/indication to compl[ete in ER i.a. | | |
| | 6.  - "To be kept closed at sea" on stgr room | | |
| | 7.  - When ER unmanned fifi system standby | | |
| | 8.  - ARBO warning for earprotection/sight goggles etc | | |
| | 9.  - QC valve for EM.gen room | | |
| | 10.  - FiFi isolating valve "to be closed in case of ER fire" | | |
| | 11.  - Sprinkler valve paintstore to indicate | | |
| | 12.  - warning near Acetylene and O2 storage | | |
| | 13. Additional 45 ltr extinguisher and foam applicator to place on ER tweendeck | | |
| | 14. n.a Luzon Strait | | |
| | 15. ready | | |
| | 16. ready | | |
| | 17. Indication to complete for CO2 valves in CO2 room i.e. each valve to be indicate + Open/Close | B.V. | |
| | 18. Box to provide for keys CO2 room (near CO2 room entrance) | | |

EXHIBIT
18
(DEFENDANT'S S.J.)

VERSCHUURE 06 22925684.

Noted on behalf of ship's / yards / company's management *

| Name : Master / Officer / Representative * | Name: Surveyor |
|---|---|
| **J. BULTHUIS** | **W.VERSCHUURE/W van der KRUIS** |
| Signature | Signature |



EXHIBIT
6/15-16/2005
P 30

Note :   This report shall be kept on board and be available
for SI- and Classification surveyors at all times

* Delete if not applicable

Shipping Inspectorate
PO box 8634
3009 AP Rotterdam
Tel:  010 - 2668600
Fax:  010 - 2022320

's-Gravenweg 665
3065 SC Rotterdam



**Inspection report**

Form B    (Ships file)

| Name ship / yard / company * | | Callsign / Yard no. * | Page | of |
|---|---|---|---|---|
| **LUZON STRAIT/CSBC** | | | **2** | **6** |

| Date of inspection | Place of inspection | Report seq. No |
|---|---|---|
| **14,20-08-2002** | **KEELUNG (TAIWAN)** | **1** |

| | | |
|---|---|---|
| 19.  CO2 room ventilation to be locked in open position (it shall not be possible to close) | ℬ ✓ | |
| 20.  CO2 bottles placed on steel (to put on rubber/wood) | | |
| 21.  CO2 bottles in corners resting against steel angle bar of CO2 bank frame | | |
| 22.  EM gen. fuel supply and return line partly made of copper | ℬ ✓ | |
| 23.  Indication for number of CO2 bottles reguired for each protected space to small Indication also to place near CO2 valves (number of CO2 bottles required for purifier room not indicated) | | |
| 24.  Heating in CO2 room missing | | |
| 25.  24 VDC connection on EM.gen. electric starter not insulated. | | |
| 26.  ready | | |
| 27.  Rubber to remove from ventilation covers for EM.gen room + indication "Only to be closed in case of fire in Emergency Generator room" | | |
| 28.  Safetyplan and fireplan not coloured + A60 insulation not indicated | | |
| 29.  Some rooms cannot be opened from inside (danger of being locked in ) | | |
| 30.  One line diagram missing on MSB (listing of non-preferent??) | | |
| 31.  see 54 | | |
| 32.  Indication missing which steeringgear pump is supplied from ESB | | |
| 33.  Indication missing in ECR which steering gear pump is in service. | | |
| 34.  Fuellines in ER not shielded/safeguarded | ℬ.✓. | |
| 35.  Hydraulic pump unit for valves near ER emergency escape lower floor not shielded | | |
| 36.  IMO pictograms in acc/ER/STGRrm etc.etc to improve to indicate location of saf. Equipment and escape routes. (Some of current indication is not fluorecent and some is not complying with IMO) | | |
| 37.  Some drainvalves from oiltanks to overflow tank not provided with quick closing device. | ℬ✓.- | |
| 38.  Sounding pipes for DB not provided with testcocks | ℬ ✓ | |
| 39.  Some hydrants/fifi isolating valves etc painted close | | |
| 40.  Pressure relief hole to provide in caps for fifi hydrants | | |
| 41.  Additional AB extinguisher to place in wheelhouse and in ECR | | |
| 42.  Epirb to re-locate away from bridgewing cover | | |
| 43.  One SART to place in FFB | | |
| 44.  IMO manoeuvring characteristics not complying with Notice to Shipping 302 | | |
| 45.  Table of life saving signals not displayed on the bridge | | |
| 46.  cancelled | | |
| 47.  40 ltr O2 bottle not provided (for reg.54) to connect to hospital | | |
| 48.  n.a. Luzon Strait | | |

Shipping Inspectorate
PO box 8634          's-Gravenweg 665
3009 AP Rotterdam  |  3065 SC Rotterdam
Tel:  010 - 2668600
Fax:  010 - 2022320



**Inspection report**

Form B    (Ships file)

| Name ship / yard / company * | Callsign / Yard no. * | Page | of |
|---|---|---|---|
| **LUZON STRAIT/CSBC** | | **3** | **6** |

| Date of inspection | Place of inspection | Report seq. No |
|---|---|---|
| **14,20-08-2002** | **KEELUNG (TAIWAN)** | **1** |

| | | |
|---|---|---|
| 49.  Visible range navigation sidelights to check | | |
| 50.  GAS and O2 line to paint red and blue respectively | | |
| 51.  see 55 | | |
| 52.  Railing scepter seized near liferaft station | | |
| 53.  n.a. Luzon Strait | | |
| 54.  Some indication missing for emergengency lights or faded | | |
| 55.  Non conductve mat missing near MSB | | |
| 56.  ER alarm in engineers cabins and in the mess too weak | *B. V.* | |
| 57.  No buzzer available for ER alarm in CE and 2E dayroom | *B. V* | |
| 58.  GEA alarm can be accepted in eng. Cabins and in mess | *B. V* | |
| 59.  Fire detection system not delayed for alarm to accommodation (see SOLAS II-2 reg.13.1.4 and reg. 14.2) | | |
| 60.  Instructions missing for Thorn T882  and T 280 fire detection panel | | |
| 61.  Accumulator for Quick closing valves unable to close all valves with oil pump switched off | *B. V.* | |
| 62.  No secondary means provided to activate QC valves (e.g. hand pump) | *B. V.* | |
| 63.  Testcock missing in OWS overboard line (diameter shall be equal to diameter overboard line) | *B. V* | |
| 64.  Overflowtank, No 1 DO tank P & S sounding pipes terminate in ER | discuss with | NSI R'dam |
| 65.  ready | | |
| 66.  Embarkationstation for davit launched liferaft to be assessed and indicated (also on safety plan) | | |
| 67.  Means to provide to fasten davit launched raft bowsing lines. | | |
| 68.  Dimmer to be removed for navigation light panel indication lights. | | |
| 69.  Immersion suits stowage location not in accordance with safety plan (shall not be stored in the rescueboat) | | |
| 70.  ~~Bridgewatch alarm in messroom defective~~  *N. A .* | | |
| 71.  Location of safe and fireplans not indicated on these plans | | |
| 72.  Fire extinguisher on ER upper platform to re-arrange to comply with max. 10 mtr walking distance | | |
| 73.  Training manual to update to comply with SOLAS 2000 amendments chapter II-2 reg. 15.2.3. | | |
| 74.  Door to EM.Gen.room is obstructed when ventilation cover is held back in open position | *B. V.* | |
| 14/19-08-2002 | | |
| 75.  All liferafts service date expired (attention correct position of liferaft i.e. 2 x davitlaunched on SB, 2 x throw-over on PS, 1 x 6 persons raft forward. | | |
| 76.  Hydraulic connections of FFB davit some badly corroded some | | |



Shipping Inspectorate
PO box 8634          | 's-Gravenweg 665
3009 AP Rotterdam   | 3065 SC Rotterdam
Tel:  010 - 2668600
Fax:  010 - 2022320

# Inspection report

### Form B    (Ships file)

| Name ship / yard / company * | Callsign / Yard no. * | Page | of |
|---|---|---|---|
| **LUZON STRAIT/CSBC** | | **4** | **6** |

| Date of inspection | Place of inspection | Report seq. No |
|---|---|---|
| **14,20-08-2002** | **KEELUNG (TAIWAN)** | **1** |

|  |  |  |
|---|---|---|
| wasted. | | |
| 77. FFB davit to test on completion repair hydraulic cylinder | *B.V REPORT TO NSI* | |
| 78. secondary means for bilging BT room not provided. | Discuss with | NSI R'dam |
| 79. Securing pin missing for BT entrance hatchcover | | |
| 80. Safety and fire control plan to be updated for actual situation on board NSI remarks to be included in revised plan. (for remarks see notes on attached Lifesaving/Fire Control plan and comments to plans below) | | |
| 81. Fire extinguisher near C2H2 and O2 locker not placed in box (extinguisher shall not be exposed to wheather to prevent corrosion) | | |
| 82. Spare charge for P2, P6 and 45 ltr foamextinguisher missing | | |
| 83. AFFF extinguisher to remove from EM.Firepump room (this space is too confined to contain an extinguisher) | | |
| 84. CO2 alarm in ER workshop, purifier room, near Generator sets hardly or not audible while ME not running. (additional alarms to be placed and sound levels throughout the ER to be tested during seatrails 25-08) | *B.V REPORT TO NSI* | |
| 85. When ER alarm is reset on keyboard in ECR, the alarm does not automatically switch over to attended ER mode and Deadmans system is not started. | *B.V. REPORT TO N.S.I* | |
| 86. Manual GEA is activated by pushbutton (shall be activated by a hold button or switch and continuesly give alarm in acc. spaces. Stopping shall only be possible in ECR) | | |
| 87. One handle missing for local control of funnel ventilation dampers | | |
| ↙ 88. CO2 pilotline failed due to grinding damage (Pilotlines to be pressuretested at 1,5 x working pressure) *READY William* | | |
| 89. Non return valve missing on CO2 pilot bottle connection toCO2 pilotline sytem | | |
| 90. Rescueboat davit slewing device seized in open position | *B.V. REPORT TO N.S.I* | |
| 91. WT door from ER EM escape to deck can be locked on deck (It shall alaways be possible to open doors from the space to escape from.) | | |
| 92. Additional spare parts for foam extinguishers not supplied i.e. washers and breakdiscs (if applicable) etc. | | |
| 93. One heat detector in ECR to be replaced by smokedetector | | |
| 94. Description of firealarm and general alarm on musterlist shall match actual alarms on board. | | |
| 95. Fault alarm on wheelhouse panel for MSB ESB powersupply indication can be dimmed | | |
| 96. Headset in steeringgear room not provided to communicate with the wheelhouse at emergency steering stand | | |
| 97. Indication of valves/emergency stops/vents etc. to complete | | |



Shipping Inspectorate
PO box 8634
3009 AP Rotterdam | 's-Gravenweg 665
Tel:  010 - 2668600 | 3065 SC Rotterdam
Fax:  010 - 2022320

**Inspection report**

Form B    (Ships file)

| Name ship / yard / company * | Callsign / Yard no. * | Page | of |
|---|---|---|---|
| **LUZON STRAIT/CSBC** | | **5** | **6** |

| Date of inspection | Place of inspection | Report seq. No |
|---|---|---|
| **14,20-08-2002** | **KEELUNG (TAIWAN)** | **1** |

| | 98. No telephone alarm in ER<br>99. Bridgewatch shall be activated in all officer cabins and mesroom<br>    (no selection shall be made) | | |
|---|---|---|---|

| Remark | Action |
|---|---|
| • Seavalves not remote controlled waterinflux calculations to submit to NSI R'dam (influxtime 20 minutes)<br>• Grating for FFB embarkation platform shall be fire proof (details to submit)<br><br>Outstanding Inspections: i.a.<br>✓ • Oil water seperator  *BV TO REPORT TO NSI.*<br>✓ • Quick closing valves  *BV TO REPORT TO NSI.*<br>• Rescueboat exercise<br>• Davitlaunched raft demonstration<br>○ *FREE FALL EXCERSISE WITH CREW*<br>Attention:<br>• Dutch MMSI number to program for EPIRB<br>• Dutch required books/logbooks etc to place on board.<br>• SOPEP, CSM, Container securing manual, Garbage record book, Oil record book, CFC logbook<br>• ISM audit for Netherlands certificate<br>• EEBD's<br>• Medical locker shall comply with Dutch requirements (colum AG)<br>• CFC leaktester<br>• All Bahamas certificates to be available prior issue Netherlands provisional certificates<br>• Approved stability booklets<br>• Report Inclining experiment<br>• Certificates for safety equipment/pumps/ME/AE/Ex equipment etc to show<br>✓ • Seatrail reports to be available (IMO manoeuvring test)<br>• Noise measurement report to be available<br>• Current  fire maintenance plan, testing, inspection,training and instruction schedules and firedrills etc. shall comply with SOLAS 2000 amendments chapter II-2 reg. 14,15 & 16<br>• Drawings/information to submit to NSI in accordance with BadS 235 (Plan approval remarks shall be complied with)<br>• Registry number to be carved in<br>• ARBO risico inventarisatie<br>• Legionella beheersplan<br>• Certification lifting gear indication SWL's etc<br><br>Comments to Fire Control Plan:<br>inter alia:<br>1. P2 extinguishers in cranes not mentioned | |

Shipping Inspectorate
PO box 8634 | 's-Gravenweg 665
3009 AP Rotterdam | 3065 SC Rotterdam
Tel:   010 - 2668600
Fax:  010 - 2022320

# Inspection report

Form B    (Ships file)

| Name ship / yard / company * | Callsign / Yard no. * | Page | of |
|---|---|---|---|
| **LUZON STRAIT/CSBC** | | **6** | **6** |

| Date of inspection | Place of inspection | Report seq. No |
|---|---|---|
| **14,20-08-2002** | **KEELUNG (TAIWAN)** | **1** |



2. Fire dampers not inditified for the space they serve e.g. acc/er/hold/bt room/ etc
3. Position of Fire Control Plan in accommodation not mentioned
4. Location of  ES1 , ES2, ES3 missing (ER, acc, foreship resp.)
5. Location remote control for Quick closing valves missing
6. Location for remote control pneumatic ER firedampers missing
7. Location for remote control pneumatic Pur. Room firedamper missing
8. ER air intake/exhaust/funnel dampers not indicated with IMO symbol
9. Several Hold ventilations missing
10. Route of escape not mentioned (primary and secondary)
11. Location $CO_2$ release station missing (3x)
12. Number of $CO_2$ bottles + weight not mentioned
13. Location of emergency battery not mentioned
14. Symbol for spare charges of fire extinguishers not used
15. Spare charges 45 ltr foam, P2 and P6 not mentioned
16. $CO_2$ protected spaces not indicated
17. Legend does not indicate the number of each item per deck (acc/ER/MD/4 castle etc)
18. Position of hyd.power unit for hatches forw. not correct
19. Location of fireplan in wheatherthight box is not correct
20. Location of Int. Shore Connection is not correct
21. Required max. walking distance to fire extinguishers in ER upper platform not observed
22. Plan not actualised for position of equipment (extinguishers) on board.
23. Smoke and heatdetectors may be omitted from the plan
24. Unnescesary details can be removed from the plan such as crane radius/winches etc
25. A60/30/15/0 and B divisions are not clear (decks and bulkheads)

On the basis of abm remarks the plan will not be approved by NSI

Comments to Life Saving Plan:
Inter alia:
1. 15 persons rafts mentioned iso 16 persons rafts
2. Position of life saving plans in accommodation not mentioned
3. Difference between rocket signals and parachute signals not clear (only 12 parachute signals are required)
4. Spare MOB light not required.
5. Number of lifejackets in bosun store in plan not corresponding with number of lifejackets mentioned in symbol list
6. IMO pictograms only used in symbol list and not in the plan itself
7. Unnescesary details can be removed from the plan such as crane radius/winches etc

---

**Report**

---

Noted on  behalf of ship's / yards / company's management *

Name : Master / Officer / Representative *

**J. BULTHUIS**

Signature

Name: Surveyor

**W.VERSCHUURE/W van der KRUIS**

Signature

Note :  This report shall be kept on board and be available
for SI- and Classification surveyors at all times

* Delete if not applicable



ISM CODE CERTIFICATION

*SHIPBOARD AUDIT REPORT*

| Local control Nr. |
|---|
| TPI 200024 |
| RISMC Nr. |
| ROT0260841 |
| Page 1 of 1 |

☑ INTERIM    ☐ INITIAL    ☐ RENEWAL    ☐ ADDITIONAL

### 1 THE VESSEL

| Name | Luzon Strait | | IMO number |
|---|---|---|---|
| | | | 9204960 |
| Company's name | Seatrade Groningen BV | | |
| Office Address (main) | Laan Corpus den Hoorn 200 | TYPE: | |
| | Groningen  9728 JS | Other cargo vessel , Refrigirated cargo | |
| | The Netherlands | | |

| Call Sign | PBHT | Date of build | 08.2002 |
|---|---|---|---|
| Port of Registry | Groningen | Class | BV |
| Gross tonnage | 14,413 | DOC Issued by | The Head of Shipping Inspection |
| Flag | The Netherlands | Expiry date | 31/10/03 |

### 2 THE AUDIT

| The audit is performed for the Company named in 1 above | Date | Location |
|---|---|---|
| | 29/08/02 | Keelung, Taiwan |

### 3 AUDIT SUMMARY          (INITIAL/RENEWAL/ADDITIONAL VERIFICATION)

The following NCN(s) issued / closed out / downgraded / upgraded / outstanding:

Issued: **NIL**

Closed out: **NIL**

Downgraded: **NIL**

Upgraded: **NIL**

Outstanding: **NIL**

### 4 RECOMMENDATION BY AUDITOR

| SHOULD A SAFETY MANAGEMENT CERTIFICATE BE ISSUED | ☑ YES | ☐ NO |
|---|---|---|

### 5 SIGNATURES (also name in CAPITALS)

The vessel has been audited against the requirements of the International Safety Management (ISM) Code and was found to be satisfactory unless otherwise indicated

| Auditor | Company Representative/Manager, Name: |
|---|---|
| M. CHANG | I have checked that the details above are correct and acceptable |
| Auditor | |
| Auditor | Date |
| | 29/08/02 |

### 6 DISTRIBUTION OF THIS REPORT

ORIGINAL to SHIP with Original NCN(s)

COPY and 1 COPY NCN(s) to LR

COPY and 1 COPY NCN(s) to Auditor



EXHIBIT
*19*
(Defendant's S.J Mo.)



EXHIBIT

issue date 24/07/2002

ISM CODE CERTIFICATION

# Lloyd's Register

## SHIP AUDIT PLAN

| Local control Nr. | TPI 200024 |
|---|---|
| RISMC Nr. | ROT0260841 |
| | Page 1 of 1 |

☑ INTERIM   ☐ INITIAL   ☐ INTERMEDIATE   ☐ PERIODIC   ☐ RENEWAL   ☐ ADDITIONAL

| Name of the Vessel | Luzon Strait |
|---|---|
| Location | Keelung, Taiwan |

**AUDIT PLAN**

*The auditor shall prepare this plan at the opening meeting. It should reflect the order in which the relevant officers/crew are to be interviewed to address the topics. A tour of the ship is to be included in the plan. The language of the audit is in English unless otherwise indicated on this plan. For Initial/Intermediate/Renewal Audits the auditor shall ensure that each element of the Code is addressed, as well as the requirements of Procedure # 5 paragraph 3.5. For Interim Audits the auditor shall ensure that the requirements of Procedure # 9 paragraph 5.4 are addressed. It should be remembered that this is a plan, and that deviations may be made due to operational requirements or audit findings. All times are approximate.*

**Audit Report distribution: Original - Company; Copy - RISMC, Flag if requested.**

| Date/Time | Auditee | Activity |
|---|---|---|
| 29/08/2002 09:00 | | Opening Meeting |
| 09:20 | Master | SMS documentation; Verification DOC & Ship's Certificates; Crew Certificates; Interviewed with the familiar of SMS and programme for familarisation and training, essential prior to sailing, language & communication. |
| 11:20 | C/O | Interview with familiar with the contents of SMS for cargo operation and PMS. |
| 11:50 | 2/O | Interview with familiar with the contents of SMS for bridge operation. |
| 13:00 | C/E & 2/E | Interview with familiar SMS and E/R operations and PMS. |
| 13:45 | Crew | General safety awareness & responsibilities and Deck, E/R tour |
| 14:20 | Auditor | Reporting |
| 15:00 | Auditor | Closing Meeting |

| Date | ARN number | Signature - Team Leader/Auditor |
|---|---|---|
| 29/08/02 | 90 | |
| Name of Team Leader/Auditor in BLOCK CAPITALS | | |
| M. CHANG | | |



**Lloyd's Register**

ISM CODE CERTIFICATION
AUDIT LOG
ISM CODE - SAFETY MANAGEMENT CERTIFICATE

| Local control Nr. |
| TPI 200024 |
| RISMC Nr. |
| ROT0260841 |
| Page 1 of 2 |

☐ DOC. REVIEW  ☑ INTERIM  ☐ INITIAL  ☐ PERIODIC  ☐ INTERMEDIATE  ☐ RENEWAL  ☐ ADDITIONAL

| Name of vessel | Luzon Strait | Type | Other cargo vessel | IMO 9204960 |
| Company | Seatrade Groningen BV | | Location Keelung, Taiwan |

**AUDIT LOG**

*Any "Observation" included in the following narrative relate to omissions or potential deficiencies in the management system which may, if not corrected, lead to a non-conformity in the future. Observations to be sequentially numbered and with relevant clause number.*

**PART A**

| (1) Controlling (R)ISMC: | (2) LR Certification Scheme Procedure(s) Ref.: |
| EMEA | CM38-01-02-012, Procedure No. 5, 9, 11, 12, 15 |

| (3) Audit Start Date and Time: | (4) Audit Completion Date and Time: |
| 29/08/2002, 09:00 | 29/08/2002, 15:00 |

| (5) DOC issued by: | Relevant Flag: The Netherlands | Expiry Date: 31/10/03 | Last Endorsement Date: 17/10/01 |

| (6) SMC No.: TPI 200024 | Relevant Flag: | Expiry Date: 28/01/03 | Endorsed: |

| (7) Crew Nationality | Master: Dutch | Chief Engineer: Dutch | Officers: Filipino | Crew: Filipino |

| (8) NCN's Raised (Give Actual Number of NCN): | **NIL** |
| NCN's Cleared: | NIL |
| NCN's Outstanding: | NIL | | Observations Raised: NIL |

**PART B**

| Priority Items to be Addressed | Comments |
|---|---|
| 1. Internal Audit Records | Master advised that the internal audit of ship will be audited within 3 monthly as per company procedure IQA.PR.01. 2.2.2.50 requirements. |
| 2. Chart Corrections & Nautical Publications | 2/O is familiar with company's system for charts correction. Mater advised that onboard charts and nautical publications all updated. |
| 3. Statutory Certification & Surveys | All stautory certificates valid and relevant surveys have been carried out that no conditions may affect the validity of certification. |
| 4. Familiarisation Training | Familiarisation planning to deck and engine department reviewed and found in order. |
| 5. Emergency Drills and Safety Records | Master stated that abandon ship & fire drill will carry out on 30/08/02 before the vessel sailing. Emergency drills programme sighted. |
| 6. Machinery & Safety Equipment Maintenance | Computerised plan maintenance system sighted and C/E & C/O presented that they are familiar with this programme. |
| 7. Masters Review of SMS/Overriding Authority | Master demonstrated the overriding authority from SMS document. |
| 8. Identification of Designated Person | Master & C/E interviewed and able to identify the D.P. Mr. P.C. Borst. |

All other aspectes of the Audit as per Procedure(s) identified in Part A - item 2 should be covered by free text in subsequent pages of this log

| Client Name *Moboch M.S.* | Signature | | Position *Captain* |
| Auditor Name M. CHANG | | ARN 90 | LR Office TAIPEI | Date 29/08/02 |

issue date 24/07/2002



**Lloyd's Register**

ISM CODE CERTIFICATION
*AUDIT LOG*

| Local control Nr. | TPI 200024 |
|---|---|
| RISMC Nr. | ROT0260841 |
| Page 2 of 2 | |

☐ DOC. REVIEW    ☑ INTERIM    ☐ INITIAL    ☐ PERIODIC    ☐ INTERMEDIATE    ☐ RENEWAL    ☐ ADDITIONAL

| Name of the Vessel | Luzon Strait | |
|---|---|---|
| | IMO Number 9204960 | Location Keelung, Taiwan |

**AUDIT LOG**

*Any "Observation" included in the following narrative relate to omissions or potential deficiencies in the management system which may, if not corrected, lead to a non-conformity in the future. Observations to be sequentially numbered and with relevant clause number.*

PART C:

An opening meeting held with Master, Chief Engineer, C/O, 2/O and 2/E to explain the purpose of this audit and method of reporting. Audit was carried out based on ISM Code, Flag state requirement and relevant LR Shipboard audit procedures.

SMS Documentation were generally reviewed found available onbaord. All documents relevant SMS and working language is English.

Manning certificates, crew's qualification and fitnes certificates reviewed and found in order.

Information related to the operation and use key equipment relevant to safety and pollution prevention are given in working langauge that understood by ship's crew.

Onboard crew: Chief Cooker, AB interviewed and found are familiar with their duties and matters related safety and pollution prevention.

Close meeting held with Master & C/E, C/O and Interim Voluntary SMC issued valid to 28 January 2003.

INTERMEDIATE VERIFICATION AUDIT ONLY

CERTIFICATE ENDORSED    ☐ YES    ☐ NO

NON LR DOCS HELD

| Date 29/08/02 | ARN number 90 | Signature - Team Leader/Auditor |
|---|---|---|
| Name of Team Leader/Auditor in BLOCK CAPITALS M. CHANG | | |

issue date 24/07/2002