# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

JOHN TURNER, et al.            :
                               :
    v.                         :          CIVIL ACTION NO.  04-936-JJF
                               :
B.V. SHIPPING COMPANY          :
LUZON STRAIT (GRONINGEN)       :


# REPLY BRIEF IN SUPPORT OF DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT


Date: September 15, 2005          PALMER BIEZUP & HENDERSON LLP
                                  Michael B. McCauley (ID 2416)
                                  1223 Foulk Road
                                  Wilmington, DE 19803
                                  (302) 594-0895
                                  (302) 478-7625 (fax)
                                  Attorneys for Defendant,
                                  B.V. Shipping Company Luzon Strait
                                  (Groningen)


**D.I. 50**
**Filed: September 15, 2005**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i - ii

I.     PLAINTIFFS HAVE FAILED TO PROVE THAT DEFENDANT
BREACHED ANY ASPECT OF THE TURNOVER DUTY. . . . . . . . . . 1

    A.    Plaintiffs admit in their Brief in Opposition that (1) the sole basis of
their claim is the manner in which the access was designed and
constructed and (2) defendant BV Shipping had no involvement with
the design of the vessel. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.    Mere shipowner knowledge of a design feature cannot support a
*prima facie* case of negligence under LHWCA § 905(b). . . . . . . . . . . . 2

    C.    The report of expert Pazos is not admissible and, in any event,
does not create an issue of material fact with regard to
§ 905 (b) negligence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

II.    PLAINTIFF HAS PRODUCED INSUFFICIENT EVIDENCE
TO ESTABLISH A BREACH OF THE ACTIVE OPERATIONS
DUTY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

III.    PLAINTIFFS' ATTEMPT TO USE SUBSEQUENT REMEDIAL
MEASURES TO ESTABLISH NEGLIGENCE AND THE
APPLICABILITY OF THE "ACTIVE OPERATIONS" DUTY IS
MISPLACED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

PBH: 178357.1

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anastasiou v. M/T WORLD TRUST*, 338 F. Supp. 2d 406 (E.D.N.Y. 2004) .............. 2, 3, 4, 14

*Bjaranson v. Botelho Shipping Corp. Manila*, 873 F.2d 1204 (9th Cir. 1989) ....................... 10

*Calhoun v. Yamaha Motor Corp.*, 350 F.3d 316 (3d Cir. 2003) ................................. 11, 13, 14

*Carbotrade, S.P.A. v. Bureau Veritas*, No. 92-1459,
   1999 U.S. Dist. LEXIS 13980 (S.D.N.Y. Sept. 14, 1999) ................................. 13

*Christensen v. Georgia-Pacific Corp.*, 279 F.3d 807 (9th Cir. 2002) ..................................... 17

*Cummiskey v. Chandris, S.A.*, 719 F.Supp. 1183 (S.D.N.Y. 1989) ......................................... 14

*Davis v. Portline Transportes Maritime Internacional*, 16 F.3d 532 (3d Cir. 1994) .............. 5

*Davis v. United States*, 827 F. Supp. 1576 (S.D. Ga. 1993) ...................................................... 2

*DeLange v. Dutra Construction, Co.*, 183 F.3d 916 (9th Cir. 1998) ........................................ 5

*Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92 (1994) ................................................... 16

*Htut v. Toko Kaiun Kaisha, Ltd.*, 1992 A.M.C. 766 (N.D. Cal. 1991) .................................... 2

*Jackson v. Egyptian Navigation Co.*, 364 F.3d 113 (3d Cir. 2004) ......................................... 8

*Kelly v. Crown Equipment Co.*, 970 F.2d 1273 (3d Cir. 1992) .............................................. 19

*Kiger v. Doucet & Adams, Inc.*, 1998 U.S. Dist. LEXIS 7473 (E.D. La. 1998) ..................... 13

*Kirsch v. Plovidba*, 971 F.2d 1026 (3d Cir. 1992) ............................................................. 8, 10

*Maldonado v. Ramirez*, 757 F.2d 48 (3d Cir. 1985) .............................................................. 14

*Mankus v. Swan Reefer I*, 2003 U.S. Dist. LEXIS 10263 (E.D. Pa. May 20, 2003) .............. 18

*Manning v. Mars, Ltd.*, No. 85-1271, 1987 U.S. Dist. LEXIS 1777 (E.D. Pa. 1986) ............. 5

*McMullen v. Guise Shipping Co.*, 1992 U.S. Dist. LEXIS 6471 (E.D. Pa. 1992) ................... 5

*McSwiggan v. Oulu Shipping Ltd.*, 1992 AMC 1825 (E.D. Pa. 1992) ...................................... 2

PBH: 178211.toa

*Prinski v. Blue Star Line*, 341 F. Supp. 2d 511 (E.D. Pa. 2004) ..................................... 6, 17, 18

*Salvato v. Hakko Maritime Corp.*, 718 F. Supp. 1443 (N.D. Cal. 1989) .................................. 2

*Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156 (1981) ............................... 9, 12

*Serbin v. Bora Corp.*, 96 F.3d 66 (3d Cir. 1996) ..................................................... 5, 17

*Shaw v. Strackhouse*, 920 F.2d 1135 (3d Cir. 1990) .................................................. 14

*Sinagra v. Atlantic Ocean Shipping, Ltd.*, 182 F. Supp. 2d 294 (E.D.N.Y. 2001) ................ 16

*Smallwood v. American Trading and Transportation Co.*,
    No. 92-869, 1993 U.S. Dist. LEXIS 17704 (N.D. Cal. 1993) .......................................... 11

*Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408 (3d Cir. 2002) ..................................... 19

*Taylor v. Moore-McCormack Lines, Inc.*, 621 F. 2d 88 (4th Cir. 1980) ................................. 11

*Tokio Marine & Fire Ins. Co. v. Grove Manufacturing Co.*, 958 F.2d 1169 (1st Cir. 1992) . 11

*Treadaway v. Societe Anonyme Louis-Dreyfus*, 894 F.2d 161 (5th Cir. 1990) ...................... 17

*Vadas v. J. Lauritzen Holdings*, 2000 U.S. Dist. LEXIS 20054,
    2001 AMC 498 (D. Conn. 2000) ................................................................................. 5

*Wells v. Flota Bananera Equatoriana, S.A.*, 1985 U.S. Dist. LEXIS 18452 (S.D.N.Y. 1985)   5

*Wright v. Daviesyndicate, Inc.*, 1993 U.S. Dist. LEXIS 8739 (E.D. Pa. 1993) ........................ 5

*Yates v. Navigation Maritime Bulgare Ltd.*, 2000 U.S. Dist. LEXIS 11229 (E.D. Pa. 2000) .. 5

## FEDERAL STATUTES AND REGULATIONS

LHWCA, 33 U.S.C. § 941 .......................................................................................... 9

OSHA Safety & Health Regulations for Longshoring, 29 C.F.R. 1918.1 <u>et seq</u> .......... 9, 12, 13

U.S. Coast Guard Regulations, 33 C.F.R. § 96.100 .............................................. 11

## FEDERAL RULES

Fed. R. Evid. 407 ..................................................................................................... 18

Defendant B.V. Shipping Company Luzon Strait (Groningen) (hereafter "BV Shipping" or "shipowner"), respectfully submits the following Reply Brief in support of its Motion for Summary Judgment (D.I. 40).

## I.    PLAINTIFFS HAVE FAILED TO PROVE THAT DEFENDANT BREACHED ANY ASPECT OF THE TURNOVER DUTY

### A.    Plaintiffs admit in their Brief in Opposition that (1) the sole basis of their claim is the manner in which the access was designed and constructed and (2) defendant BV Shipping had no involvement with the design of the vessel.

Plaintiffs' opposition fails to raise any issues of material fact regarding alleged turnover duty negligence by shipowner BV Shipping. Plaintiffs now admit that the condition which forms the basis of the claim against BV Shipping is the manner in which the access in question was designed. It is also conceded by plaintiffs that the securing device was not broken or deformed prior to the alleged accident. (Pls.' Brief at 21). Rather, the condition which forms the basis of plaintiffs' liability theory is limited to the access in question having been designed (a) with an inadequately sized securing device and (b) without separate handholds. (Pls.' Brief at 21).[1] This limited theory of liability is also confirmed in plaintiffs' recitation of the "Conclusions and Opinions" section of Mr. Pazos' report, wherein Mr. Pazos limits the complained-of condition to "the lack of handholds" and the "small hook" for the access in question. (Pls.' Brief at 13). The expert upon which plaintiffs are relying, Mr. Pazos, is a naval architect / marine engineer.

---

[1] Plaintiffs state: "The hazard or dangerous condition in this case - the presence of the small hook and eye securing device for the hatch lid in question, coupled with the absence of a separate handhold, involves the structure of the ship," (Pls.' Brief at 19), and "It is plaintiffs' position that the small hook and eye device, coupled with the absence of a separate handhold, constituted a hazardous condition . . . ." (*Id.* at 21).

Plaintiffs also concede that defendant BV Shipping had no involvement in the design of the ship and that they are not seeking recovery on the ground that the defendant negligently designed the vessel.[2]  Instead, plaintiffs are arguing that Captain Mobach's general awareness of the design and construction of the access[3] somehow establishes negligence on the part of the shipowner, even though Captain Mobach admittedly was not a naval architect.

**B.    Mere shipowner knowledge of a design feature cannot support a *prima facie* case of negligence under LHWCA § 905(b).**

The fact that the construction arrangement of the access and cover handhold was known by or obvious to Captain Mobach or other vessel personnel just prior to the ship's maiden voyage is not sufficient evidence with which to support a *prima facie* case of negligence under LHWCA § 905(b).  In this regard, see *Anastasiou v. M/T WORLD TRUST*, 338 F. Supp. 2d 406, 418 (E.D.N.Y. 2004); *McSwiggan v. Oulu Shipping Ltd.*, 1992 AMC 1825, 1829 (E.D. Pa. 1992); *Htut v. Toko Kaiun Kaisha, Ltd.*, 1992 A.M.C. 766 (N.D. Cal. 1991); *Salvato v. Hakko Maritime Corp.*, 718 F. Supp. 1443, 1444 (N.D. Cal. 1989); *Davis v. United States*, 827 F. Supp. 1576, 1581-82 (S.D. Ga. 1993), wherein the courts rejected the argument that a shipowner's knowledge of an allegedly defective design feature coupled with the failure to take corrective action before an accident constitutes shipowner negligence under § 905(b).  Such knowledge or obviousness is insufficient as a matter of law absent evidence that the shipowner had actual or constructive knowledge of prior accidents or safety problems caused by the alleged design defect. *Anastasiou,* 338 F. Supp. 2d at 421; *see also id.* at 419

---

[2]  "[P]laintiffs do not seek recovery from defendant on the ground that it negligently **designed** the ship.  It did not design the ship." (Pls.' Brief at 31).

[3]The LUZON STRAIT was a brand new vessel, having been commissioned on August 31, 2002, at the shipyard in Keelung, Taiwan.  (Ex. 6, Mobach Dep. pp. 26-27).

("Here, Plaintiff has not come forward with any evidence that Defendants had actual or constructive knowledge from any third party of the dangerous condition of the ramp . . . . Plaintiff has failed to proffer any evidence which would indicate that Defendants were aware that the ramp was unsafe . . . or evidence of other accidents or problems because of the ramp's condition. . ."); *id.* at 421 (Plaintiff "did not offer any evidence of other accidents or problems because of the construction of the ramp.").

The evidence of record indicates that defendant BV Shipping had no actual or constructive notice of any prior problems or accidents with the newly designed and constructed access. In fact, all indications to the shipowner were that the access and securing device were safe and adequate. Just prior to the vessel sailing from the shipyard on its maiden voyage, the access and the securing device were inspected by the Dutch Flag State Inspector who certified the vessel as properly constructed and equipped for sailing. (Ex. 6, Mobach Dep. pp. 148-150; Ex. 18, Dutch Flag Inspection Report). Moreover, Surveyors from Bureau Veritas, the LUZON STRAIT's Classification Society, fully inspected the vessel and certified that it was in full compliance with all applicable safety and construction requirements. (Ex. 8, Borst Dep. pp. 62-64). Captain Mobach, the Master of the M/V LUZON STRAIT, observed and used the access in question while the vessel was in the shipyard and considered the access cover handhold and the securing device, as designed and constructed by the shipyard, to be normal, safe, and adequate:

> Q.    Now when you saw the situation in those two weeks before the ship was commissioned, did you consider the handhold for this access hatch – and I'm talking about the forward end of number 2C – to be adequate?
>
> A.    Yes.
>
> Q.    And why?

A.    This layout features that you can grab onto the coaming, like I would customarily do. And also the locked hatch lid is able to be your handhold.

Q.    Did you consider the it to be an adequate situation for the handhold when the handhold is the hatch lid itself?

A.    Yes.

Q.    Did you consider the locking mechanism or the holding device for this hatch lid – that is the hook and eye that we have seen and that you have described – to be an adequate securing device ?

A.    Yes. It is the same as on many layouts in many ships. It's similar.

Q.    So then I take it that you did not have any discussion with anybody from Seatrade or anybody in the shipyard with regard to the handhold or lack of handholds for the securing device for this particular hatch cover at the forward end of 2C; is that correct ?

A.    That's correct, we didn't have any discussion on that. And the shipping inspection also went through these cargo holds and these accesses, and on any other issue they would have raised and noted it in the inspection report, but they didn't. So everybody who went there – the chief engineers, the inspectors, me – we all considered this a normal and safe access lid with all of the required facilities for securing and holding.

(Ex. 6, Mobach Dep. pp 89-90).

Similarly, the Chief Engineer, Cornelis Balvert, used the access in question and considered the securing device and hatch lid handhold as normal and adequate.  (Ex. 22, C/E Dep. pp. 11-12, 15).

Plaintiffs have failed to come forward with any evidence of prior accidents or problems relating to the access and the securing device as required by *Anastasiou,* 228 F. Supp. at 421.  There is no evidence of record to suggest that BV Shipping could not rely on the China Shipbuilding Company shipyard ("CSBC") to sell them a properly designed and constructed ship.  There is no evidence of record to suggest that BV Shipping could not rely on the Dutch Flag State inspectors and the vessel's Classification Society, who both certified

the brand new vessel as properly constructed and equipped and in full compliance with all international safety and construction requirements. There is no argument by plaintiff that the access was either not properly maintained or that was broken before the alleged accident. (Pls.' Brief at 21).

In support of their theory of negligence against BV Shipping, Plaintiffs rely on the testimony of longshoremen William Grinnel and Sean Brady that they observed the securing device to be bent or deformed after the accident. Yet the mere existence of a defect in or the malfunction of a piece of ship's equipment, without proof of negligence on the part of the shipowner, cannot establish liability under LHWCA § 905(b). *See e.g., Yates v. Navigation Maritime Bulgare Ltd.*, 2000 U.S. Dist. LEXIS 11229, at *10-*12 (E.D. Pa. 2000); *Wells v. Flota Bananera Equatoriana, S.A.*, 1985 U.S. Dist. LEXIS 18452, at *8 (S.D.N.Y. 1985); *Vadas v. J. Lauritzen Holdings*, 2000 U.S. Dist. LEXIS 20054, at *10, 2001 AMC 498 (D. Conn. 2000); *Wright v. Daviesyndicate, Inc.*, 1993 U.S. Dist. LEXIS 8739 (E.D. Pa. 1993); *McMullen v. Guise Shipping Co.*, 1992 U.S. Dist. LEXIS 6471 (E.D. Pa. 1992), *aff'd* 983 F.2d 1051 (3d Cir. 1992); *Manning v. Mars, Ltd.*, No. 85-1271, 1987 U.S. Dist. LEXIS 1777 (E.D. Pa. 1986) *aff'd* 833 F.2d 305 (3d Cir. 1987); *DeLange v. Dutra Construction, Co.*, 183 F.3d 916, 921 (9th Cir. 1998).

In support of their turnover duty argument plaintiffs cite the cases of *Serbin v. Bora Corp.*, 96 F.3d 66 (3d Cir. 1996) and *Davis v. Portline Transportes Maritime Internacional*, 16 F.3d 532 (3d Cir. 1994). Both *Serbin* and *Davis* turned on the application of the active operations duty which "contrasts materially" from the turnover duty. *Serbin*, 96 F.3d at 75. The *Serbin* case, unlike the case at bar, involved a piece of ship's equipment, a jammed snatch block, which was broken **before** the accident. In *Serbin* the plaintiff argued that the

shipowner should have discovered and corrected the condition, as the snatch block was jammed prior to the accident and was a piece of equipment that had always remained under the active control of the shipowner. *Davis* is similarly distinguishable because the condition complained of, an icy surface on deck, was actually created by the ship's crew who hosed the deck down in freezing weather **before** the slip-and-fall accident. Here, the plaintiffs have already admitted that "[t]he defendant did not design the ship" and, therefore, the defendant could not have created the design features which are the focus of plaintiffs' case. (Pls.' Brief at 31).

Plaintiffs also rely on the case of *Prinski v. Blue Star Line,* 341 F. Supp. 2d  511 (E.D. Pa. 2004), to support their turnover duty argument. *Prinski* merely confirms that evidence of prior accidents or problems is necessary to prove negligence when a longshoreman's case is based on the manner in which a vessel is designed or constructed. In *Prinski*, unlike the case at bar, the longshoremen had previously made numerous complaints to ship's personnel about the height of archways through which the longshoremen and crew walked. Moreover, in *Prinski*, unlike the case at bar, the Captain of the vessel on which Prinski was working actually admitted that he had also bumped his hard hat on the archways at times. *Id.* at 515. In the instant case there is no evidence of prior complaints about the access arrangement and there is no evidence that Captain Mobach or any other member of the ship's crew ever had any problems using the access in question.

Plaintiffs also argue (Pls.' Brief at 23-24) that the inconsistent heights involved in *Prinski* (among what were intended to be identical archways) are somehow analogous to the access in the instant case as compared to the aft access located in the cooler trunk where no cargo is loaded, stowed and discharged. Plaintiffs' argument in this regard is disingenuous.

Plaintiffs admit in their own Brief that the access hatch at the forward end of 2C was located in the middle of the hatch where cargo would be stowed and the aft access hatch was located in a separate compartment or trunk space known as the cooler room. (Pls.'Brief at 3-4). The plaintiffs state on page 7 of their Brief: "[a] permanent handhold could not have been welded into the deck adjacent to the forward access hatch lid at 2C since the presence of such a permanent basis would have interfered with the stowage of cargo and at that deck level." Since the aft access hatch was located in the adjacent but segregated cooler trunk, it was possible to have separate handholds. (Ex. 6, Mobach Dep. pp. 67-68). Unlike the archways in *Prinski*, the forward and aft access hatches in compartment 2C are completely different due to the spaces in which they are situated. Hence, the existence of a separate permanent handhold at the aft access in the cooler trunk would not serve to put the ship's personnel on notice of any potential problem with the forward access, which was considered normal and adequate by Captain Mobach, the Dutch Flag State inspectors, the Classification Society (Bureau Veritas), and plaintiff's own Stevedore Supervisor, Cliff Lasch. (Ex. 6, Mobach Dep. pp. 89-90, 148-150; Ex. 4, Lasch Dep., p 46.; Ex. 8, Borst Dep. pp. 62-64; Ex. 18).

Plaintiffs ignore the facts of record in contending that the "size, shape, and location of the hook and eye securing device for the hatch lid in question was anything but obvious to the stevedore and longshoremen." (Pls.' Brief at 25). The compartment in which the access hatch was located, 2C, was completely empty of cargo the entire day of plaintiff's alleged accident. (Ex. 23 Ship's Port Log, November 7, 2002; Ex. 4, Lasch Dep. pp. 53-55, Ex. 13). As plaintiffs have admitted, the access hatch is situated in the middle of "a totally clear, unobstructed area." (Pls.' Brief at 11, quoting Mr. Pazos' report). Indeed, the photographs of the access hatch in question reveal that the access lid and the hook and eye securing device

are open and obvious to anyone walking through the open and unobstructed 2C deck to get to the access opening. (Ex. 9, Photos of access hatch). On November 8, 2002, Plaintiff John Turner, the DRS Supervisor Cliff Lasch, and plaintiff's fellow longshoremen all had to walk through the open and unobstructed deck area in 2C to get to the access opening and had an unobstructed view of the access while approaching and entering the opening to get to the ladder.[4] (Ex. 2, Pl. Dep. pp. 51-55; 69; 75-78; Ex. 4, Lasch Dep. pp 32-33; 35-37; 45-46). For anyone who chose to look, the access cover and the hook and eye securing device were open and obvious.[5]

Plaintiffs also misstate Captain Mobach's testimony with regard to the ability to observe the hook and eye device. Plaintiffs state on page 4 of their Brief that "when the hatch lid was placed in the open position the hook and eye was not visible to anyone ascending and descending in and out of the D level . . ." and cites to, *inter alia*, Captain Mobach's testimony, page 58. Captain Mobach actually testified that one could not see the securing device when climbing up the ladder. The obviousness of the securing device while walking to, approaching and climbing down the ladder was not covered in his testimony.

---

[4] As can be seen from the plans for the 2B and 2C decks, the forward access and fixed ladder leading from the deck above, 2B, to the deck in question, 2C, is located on the port side of both compartments. The bottom of this fixed ladder is located to the port side of the access in question and faces the **back** side of the access cover when in the open position. The Stevedore Supervisor, the plaintiff, and all longshoremen who worked in 2D would have had to walk from the bottom of the fixed ladder on the 2C level in a starboard /aft direction to get to the access in question and would have had a full view of the **back** of the access cover where the securing device was located. (Ex. 24 (attached), Plans of Compartments 2B and 2C).

[5] In this regard, it should be noted that the question of "obviousness" is not a triable issue of fact in every case. *Jackson v. Egyptian Navigation Co.*, 364 F.3d 113 (3d Cir. 2004) (affirming summary judgment in favor of the shipowner since the hazard would have been apparent to any experienced longshoremen); *Kirsch v. Plovidba*, 971 F.2d 1026, 1023-30 (3d Cir. 1992) (affirming summary judgment in favor of shipowner where the condition in question, a large oil slick on the deck of the ship's cargo hold, was an obvious one that a competent stevedore could have avoided).

It should be noted that prior to the commencement of cargo operations in compartment 2D the expert stevedore, DRS, was, in fact, **required** by the applicable OSHA Safety and Health Regulations for Longshoring, 29 C.F.R § 1918.24 (a), (b), and (c), to inspect the securing device and access cover in question as part of its duties to (1) ensure that there was at least one safe and accessible fixed ladder with an effective means to gain a handhold at the top of the ladder and (2) prohibit the use of any fixed ladders that were visibly unsafe. Since the Supervisor Lasch admitted that he and the DRS longshoremen were using the access lid in question as the handhold for the fixed ladder between 2C and 2D, the shipowner was entitled to rely on expert stevedore DRS to obey the mandatory OSHA regulations by prohibiting the use of any handhold or ladder that they considered to be unsafe. See LHWCA, 33 U.S.C. § 941; *Scindia Steam Navigation Co. v. De Los Santos*, 451 US 156, 176 (1981). The Stevedore Supervisor, Cliff Lasch, readily acknowledged that it was the stevedore's responsibility to ensure that the access lids were open and properly secured before use by the plaintiff and his fellow longshoremen. (Ex. 4, Lasch Dep. p. 36-37). In these circumstances, the shipowner was entitled to expect that both the longshoremen and the expert stevedore would observe the open and obvious access arrangement, including the securing device and cover, before using it.

Plaintiffs' statement (page 27 of the Brief in Opposition) that the access and securing device could not be avoided by the stevedore is contrary to the evidence of record. First, it is clear that on November 8, 2002, the ship's crew opened the aft access in the cooler room which also ran from 2C to 2D for use by the longshoremen. (Ex. 6, Mobach Dep. pp. 154-155). The aft access opening in the 2C cooler room with the separate handhold provided the stevedore with an alternate means of access to and from compartment 2D. Second, there was

the option of utilizing an OSHA approved portable ladder that can be placed through the

cargo hatch opening between 2D and 2C, a practice that stevedores often used in the

compartment in question.  (Ex. 6,  Mobach Dep. pp. 113-114; 156-157).[6]  Third, since Turner

and his fellow longshoremen had just completed the discharge of the compartment, there was

the option of riding the pallet tray out of compartment 2D.  (Ex. 6, Mobach Dep. p 113-114;

156-157; Ex. 4, Lasch Dep. pp 55-58).  The expert stevedore DRS and plaintiff Turner had a

number of alternate ways to enter and exit compartment 2D.  More importantly, the

shipowner, as a matter of law,  was entitled to rely on the competence of stevedore DRS to

comply with the mandatory OSHA regulations by providing its longshoremen a safe place to

work and responding to conditions that might be encountered while working aboard the

LUZON STRAIT.  *See Scindia*, 451 at 167-68, 170-71; *Kirsch v. Plovidba,* 971 F.2d 1026,

1029-30 (3d Cir. 1992); *Bjaranson v. Botelho Shipping Corp. Manila*, 873 F.2d 1204, 1208

(9th Cir. 1989).

  **C.**  **The report of expert Pazos is not admissible and, in any event, does not create an issue of material fact with regard to § 905 (b) negligence.**

  Plaintiffs rely on the opinions of Hector Pazos, a naval architect / marine engineer, in

an attempt to create an issue of fact with regard to § 905(b) negligence.  The opinions of Mr.

Pazos are not admissible because they constitute legal conclusions without support in the law,

and have no legal relevance to a claim under § 905 (b) of the LHWCA.  Moreover, Mr. Pazos

is not qualified to render an opinion on the duties and responsibilities of a shipowner or a

ship's Master serving aboard a refrigerated cargo vessel such as the M/V LUZON STRAIT.

---

  [6] It should be noted that longshoremen often must enter and exit compartments like 2D with portable ladders, as when the accesses are blocked by the stow of cargo.  This is often done at the start of the discharge of a compartment in what is called the "breakout" of the hatch.

It is well established that an expert witness may not testify as to matters outside his or her *specific* area of expertise. *See Calhoun v. Yamaha Motor Corp.*, 350 F.3d 316, 322-24 (3d Cir. 2003); *Tokio Marine & Fire Ins. Co. v. Grove Manufacturing Co.*, 958 F.2d 1169, 1174-75 (1st Cir. 1992).

Mr. Pazos' report recites "[e]xtractions" from U.S. Coast Guard Regulations, title 33 C.F.R. § 96.100, which he says incorporate a portion of the International Convention for the Safety of Life at Sea ("SOLAS") which, in turn, adopts the International Safety Management Code ("ISM"). What Mr. Pazos fails to point out is that these regulatory regimes pertain only to the vessel's obligation to the ship's crewmembers, not to longshoremen or visitors in port. As a matter of law, such regulations applicable to seaman cannot be invoked by a longshoreman for purposes of asserting an action against a shipowner. *See Taylor v. Moore-McCormack Lines, Inc.*, 621 F. 2d 88 (4th Cir. 1980); *Smallwood v. American Trading and Transportation Co.*, No. 92-869, 1993 U.S. Dist. LEXIS 17704, at *20 (N.D. Cal. 1993) ("Coast Guard regulations are inapplicable to this action [under § 905(b)].")

The ISM Code is simply a code which requires a shipowner to have a Safety Management System. Mr. Pazos does not cite to or quote any section of the code that specifically refers to access covers or access securing devices because there are no such sections in the ISM. Mr. Pazos fails to recognize that on August 29, 2002, Lloyd's Register conducted a full audit of the M/V LUZON STRAIT's Safety Management System, certified that the system was compliant with the ISM Code, and issued an ISM Safety Management Certificate. (Ex. 19, ISM Audit and Safety Management Certificate).

Mr. Pazos also cites and relies on what has been described as "the International Labour Organization Publication 'Safety and Health in Dock Work.'" There is no

explanation by Mr. Pazos as to how or why this publication would somehow apply to this matter. Plaintiffs have cited no legal authority applying this publication to a LHWCA § 905(b) case. This publication has no application to the case at bar and is irrelevant. Peter Borst, the defendant's Senior Quality Coordinator, testified that the defendant's approved ISM Safety Management System does not include the ILO publication cited by Mr. Pazos. (Ex. 8, Borst Dep., pp. 19-20 ). Moreover, unlike the OSHA Safety & Health Regulations for Longshoring, 29 C.F.R. 1918.1 et seq, Congress has not implemented this international publication so as to apply to the work of longshoremen in the ports of the United States.

As set forth in detail in Defendant's opening brief, Congress in 1972 amended the LHWCA and prescribed the exclusive duties and responsibilities of a shipowner and the stevedore employer. *Scindia*, 451 U.S. 168-72. This Congressional mandate included LHWCA § 941, which implemented the safety regulations applicable to the work performed by longshoremen, the OSHA Safety & Health Regulations for Longshoring, 29 C.F.R. § 1918.1 et seq. Congress placed the statutory duty to provide for the safety of the longshoremen on the stevedore employer because it concluded that it was the stevedore who was in the best position to avoid accidents during cargo operations. *Scindia*, 451 U.S. at 170-171. Congress has not implemented any of the statutes or publications cited by Mr. Pazos as part of or applicable to the LHWCA.

Not surprisingly, Mr. Pazos conveniently ignores the safety regulations that actually did apply as a matter of law to plaintiff John Turner and his stevedore employer, DRS, namely the OSHA Safety & Health Regulations for Longshoring, 29 C.F.R. § 1918.1 et seq. This is because these regulations place the duty squarely on the expert stevedore, DRS, to ensure there was that there was at least one safe and accessible fixed ladder with an effective

means to gain a handhold at the top of the ladder and to prohibit the use of any fixed ladders that were visibly unsafe.  29 C.F.R § 1918.24 (a), (b), and (c).

Mr. Pazos offers a curriculum vitae which indicates that since 1970 he has been a consultant at "Expert Witnesses, Inc." His background and education is as a naval architect / marine engineer. He does not indicate that he is a Licenced Ship's Captain nor has he ever served as a Captain or deck officer aboard a refrigerated cargo vessel such as the M/V LUZON STRAIT.  In these circumstances, Mr. Pazos is not qualified to give any opinion as to what  the Master and deck officers who served aboard the LUZON STRAIT should have known and done under the circumstances.[7]  *Calhoun v. Yamaha Motor Corp.*, 350 F.3d 316, 322-24 (3d Cir. 2003).  The "Conclusions and Opinions" of Mr. Pazos are all based on Mr. Pazos' unsupported opinion that the alleged defective design and construction "should have been obvious" to the officers and crew.  The report of Mr. Pazos also makes reference to "surveyors" and "port engineers" as representatives of the owner who should have noticed the alleged design defects; however, Mr. Pazos fails to identify the persons to whom he is referring.  The Dutch Flag State inspectors who inspected the access in question and certified the vessel as properly constructed and equipped for sailing were an independent entity acting for the Dutch Flag and were not representatives of the shipowner.  Similarly, the Classification Society, Bureau Veritas, who surveyed the vessel and confirmed it was in full compliance with the construction requirements of the society, is an independent entity and cannot be considered to be a representative of the shipowner.  *See Carbotrade, S.P.A. v. Bureau Veritas*, No. 92-1459, 1999 U.S. Dist. LEXIS 13980, at *7-*8 (S.D.N.Y. Sept. 14,

---

[7] Mr. Pazos' opinion has previously been rejected due to his venturing outside his area of expertise. *Kiger v. Doucet & Adams, Inc.*, 1998 U.S. Dist. LEXIS 7473 (E.D. La. 1998), *aff'd*, 209 F.3d 719 (5th Cir. 2000).

1999). To the contrary, the defendant was entitled to rely on the certifications by the flag state and the classification society to verify compliance with applicable standards and confirm that the vessel was properly constructed and equipped. *See generally Anastasiou*, 338 F. Supp. 2d at 419.

Once you strip away the improper and inapplicable references to legal standards, the inaccurate facts, and the improper opinions from the Pazos report, what is left is a naval architect's opinion that the access was improperly designed (a) with an inadequately sized securing device and (b) without separate handholds. This opinion cannot support a § 905(b) negligence claim as it is the equivalent of an unseaworthiness allegation, a claim which is barred under the LHWCA.

Ultimately, Mr. Pazos provides an opinion which fails to meet the requirements of Rules 702 and 703 pertaining to expert testimony. In a maritime case, as with any lawsuit, a party may not defeat a summary judgment motion simply by producing an expert report, as the expert's opinion must be supported by specific facts and an adequate explanation as to how the expert derived his conclusions. *Shaw v. Strackhouse,* 920 F.2d 1135, 1144 (3d Cir. 1990); *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985); *see also Cummiskey v. Chandris, S.A.*, 719 F.Supp. 1183 (S.D.N.Y. 1989), *aff'd*, 895 F.2d 107 (2d Cir. 1990), and cases cited. Moreover, the expert must be qualified to render the opinion and cannot venture outside his area of expertise. *Calhoun v. Yamaha Motor Corp.*, 350 F.3d 316, 322-24 (3d Cir. 2003). Here, however, Mr. Pazos has done nothing more than refer generally to various inapplicable "standards" and assert a "net opinion" that supports the plaintiff's claim without a proper factual basis, without the proper qualifications, and without a proper explanation of

his reasoning or the authoritative support for that reasoning.  In these circumstances, Mr. Pazos' report should be excluded from evidence.

## II.    PLAINTIFF HAS PRODUCED INSUFFICIENT EVIDENCE TO ESTABLISH A BREACH OF THE ACTIVE OPERATIONS  DUTY

It is plaintiffs' argument that the active operations duty somehow applies to this matter because ship's personnel opened and secured the access cover in question for use by the longshoremen **prior** to the start of cargo operations on November 8, 2002.  Plaintiffs' argument ignores the facts of record and is contrary to the applicable law.  It is undisputed that there were no members of the ship's crew at or near the access in question during the time period that the plaintiff and his fellow workers entered, exited and discharged cargo from compartment 2D on November 8, 2005.  (Ex. 2, Pl. Dep. p. 117; Ex. 16, Brady Dep. pp. 33-34; Ex. 14 , Ringgold Dep. p. 25; Ex. 15, Grinnel Dep. p. 27).  It is also undisputed that **both** the forward (access in question) and the aft (in cooler room) accesses in 2C were opened by ship's personnel for use by the longshoremen at 0600 on November 8, 2002.  (Ex. 6, Mobach Dep. pp. 154-55).  Hence, plaintiffs' argument that defendant designated the forward access as the only one to be used by the longshoreman is not supported by the evidence of record.

There is no factual support for plaintiffs' contention the shipowner had actual knowledge of the alleged design defects and that the vessel should have been aware that the alleged design defects presented an unreasonable risk of harm to the plaintiff.  The only support provided by plaintiffs for these contentions is the general awareness of Captain Mobach of the arrangement of the access and the fact that there was a handhold and an allegedly larger securing device[8] at the access at the aft end in the cooler room.  As already

---

[8]Plaintiffs have cited no competent evidence of record to support this allegation.

explained in section II A. above, such knowledge or obviousness of a construction

arrangement is insufficient as a matter of law, absent evidence that the shipowner had actual

or constructive knowledge of prior accidents or safety problems caused by the alleged design

defect.  Plaintiffs attempt to establish actual knowledge of the alleged design defects by

arguing that there were obvious differences in the design of the aft access in the cooler room

as compared to the access in question located in the open hatch space.  As set forth in section

II B. above, plaintiffs have already admitted in their brief that the forward and aft access

hatches in compartment 2C are completely different designs due to the two different spaces in

which they are situated.  Plaintiffs also argue that the report of their expert, Mr. Pazos,

somehow provides the evidence necessary to support an active operations claim.  As set forth

in detail above, Mr. Pazos report is inadmissible and, in any event, does not provide the

required evidentiary support for a *prima facie* case.

Given the facts as alleged by plaintiffs, the active operations duty cannot, as a matter

of law, apply to this case.  The negligent conduct alleged by plaintiffs, i.e., the failure to

remedy alleged defects in the design of an access cover, did not occur during cargo

operations.  Plaintiffs contend in their Brief in Opposition that Captain Mobach became

familiar with the allegedly defective design and construction arrangement prior to the vessel

sailing on its maiden voyage. (Pls.' Brief at 5-6).  Moreover, the mere opening of the forward

and aft accesses in 2C cannot constitute active involvement in the cargo operations, because

these accesses were opened **prior to** the commencement of cargo operations on November 8,

2005, which was **prior to the turnover** of the vessel to the expert stevedore.  *See Howlett v.*

*Birkdale Shipping Co., S.A.*, 512 U.S. 92, 97 (1994); *Sinagra v. Atlantic Ocean Shipping,*

*Ltd.*, 182 F. Supp. 2d 294 ,302 (E.D.N.Y. 2001); *see also Treadaway v. Societe Anonyme Louis-Dreyfus,* 894 F.2d 161, 166 (5th Cir. 1990).[9]

Plaintiffs' reliance on the *Serbin* and *Davis* cases in support of the application of the active operations duty is misplaced. The *Serbin* case, unlike the case at bar, involved a piece of ship's equipment, a jammed snatch block, which became broken **before** the accident . *Serbin* did not involve design defects which allegedly resulted in failure at the time of the accident. Moreover, in *Serbin* the defendant shipowner admitted that the broken snatch block was always in the control of the shipowner as ". . . the crux of the shipowner's defense was that the plaintiff should have waited for the crew to take care of the problem." *Serbin,* 96 F.3d at 71. Similarly, *Davis* has no application to the case at bar because the condition complained of, an icy surface on deck, was actually created by the ship's crew during cargo operations just prior to the accident when they hosed the deck down with water in freezing weather in an effort to wash off the remnants of a bulk cargo of cement. Here, unlike *Davis*, the complained-of conduct by defendant BV Shipping is alleged to have occurred before the commencement of cargo operations on November 8, 2002. Moreover, as plaintiffs concede, BV Shipping, unlike the shipowner in *Davis*, did not create the alleged hazard.

Plaintiffs rely heavily on the decision of Judge Brody in *Prinski v. Blue Star Line Marine Ltd., supra.* As it happens, however, Judge Brody recognized that claims premised on pre-existing conditions must be reviewed in the context of the turnover duty, and expressly rejected the suggestion that such a pre-existing condition triggers the active control duty. Specifically, the plaintiff longshoreman argued that the vessel necessarily retained

---

[9] Defendant's position as to the inapplicability of the active operations duty is briefed on pages 34-38 of the opening Brief and is incorporated herein by reference. *See also Christensen v. Georgia-Pacific Corp.*, 279 F.3d 807 (9th Cir. 2002).

control over the archways, and had a duty to maintain the archways, whereas the stevedore had no authority to change to the structure of the archways or lessen the danger.  Judge Brody pointed out that, as the Third Circuit held in *Davis, supra*,

> "[T]he purpose of requiring [that] the vessel substantially control the area before imposing the active operations duty is to ensure that the 'active operations duty does not supplant the turnover duty/duty to warn.' *Id.* If the court accepted the plaintiffs' argument the active operations duty would apply whenever the cargo operations were "related to" the structure of the ship, which would ensure that the active operations duty supplanted the turnover duty. Therefore, I find that defendant has no active operations duty in this case" *Prinski,* 341 F. Supp.2d at 524.

Similarly, in the case at bar, the active operations duty cannot apply simply because a structure of the ship was alleged to be involved in the accident.  There is no evidence of record proving substantial control of compartment 2C during the cargo operations conducted on the afternoon of November 8, 2002.[10]

## III.   PLAINTIFFS' ATTEMPT TO USE SUBSEQUENT REMEDIAL MEASURES TO ESTABLISH NEGLIGENCE AND THE APPLICABILITY OF THE "ACTIVE OPERATIONS" DUTY IS MISPLACED.

Rule 407 of the Federal Rules of Evidence provides:

When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction.  This rule does not require the exclusion of evidence of subsequent measures when offered for another

---

[10] *See also Mankus v. Swan Reefer I,* 2003 U.S. Dist. LEXIS 10263, at *29-*30 (E.D. Pa. May 20, 2003) (summary judgment granted on the active operations duty where the hazard, improperly knotted and improperly stowed container power cord that was solely the responsibility of the shipowner, was created by the ship's personnel in preparation for cargo discharge, with the court commenting: "Plaintiff presents no evidence to support the notion that the defendant retained any control whatsoever, much less substantial control, over the domain of the stevedoring operation once the unloading began."); *see also id.* at *29 n. 16 ("The active operations does not concern the issue of 'responsibility' but rather the central issue is one of 'control' once the stevedoring operation, here the discharge of cargo, has begun.").

> purpose, such as proving ownership, control, or feasibility of precautionary
> measures, if controverted, or impeachment.

Under the express terms of the rule, a plaintiff may not rely on subsequent remedial measures

to show "negligence, culpable conduct, a defect in a product, a defect in a product's design,

or a need for a warning or instruction negligence." The underlying rationale is twofold.

First, an alteration made after an accident should not be construed as an admission of

liability, since a conscientious defendant would want to make positive changes even if the

accident occurred through no fault of its own. Second, the law should encourage defendants

to undertake voluntary steps to promote safety, and a defendant who does so should not run

the risk of having its actions later used against it. *Kelly v. Crown Equipment Co.*, 970 F.2d

1273, 1276 (3d Cir. 1992); *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 415 (3d Cir.

2002). Hence, plaintiffs' reliance on the subsequent alteration of the access securing device

and the installation of a portable handle to prove that the defendant should have been aware

of alleged design defects prior to the date of the accident is impermissible.

Plaintiffs also assert that evidence of the subsequent alterations made to the hatchway

should be admissible "as evidence of the defendant's control over the area in question and the

feasibility of such precautionary measures – particularly where, as here, defendant seems to

be suggesting that it was powerless to undo the original design of the condition in question."

(Pls.' Br. p. 37 fn. 21.) Yet the defendant has never contested the feasibility of installing a

portable handhold or a different securing device on the hatch, and with regard to the issue of

control, there is no dispute that the defendant, as the owner of the Luzon Strait, maintained

general control over its vessel for purposes of maintenance and repairs. The "control" that

plaintiff must demonstrate to trigger an "active operations duty" is not merely control of the

ship in a general sense, but rather *active* and *direct* control over the activities of the

stevedore. The fact that a portable handhold and securing device were installed many months after the accident obviously does not establish that the shipowner interjected itself into the work being performed by the expert stevedore DRS at the time of Mr. Turner's alleged injury.[11]

## CONCLUSION

Plaintiffs cannot demonstrate any breach by defendant BV Shipping of any of the limited duties owed by a shipowner under *Scindia* and *Howlett*. Plaintiff's claims against the defendant must therefore be dismissed and summary judgment in favor of defendant granted.

Respectfully submitted,

PALMER BIEZUP & HENDERSON LLP

Date: September 15, 2005

By: /s/ Michael B. McCauley
    Michael B. McCauley (ID 2416)
    1223 Foulk Road
    Wilmington, DE 19803
    (302) 594-0895
    (302) 478-7625 (fax)
    Attorneys for Defendant,
    B.V. Shipping Company Luzon Strait
    (Groningen)

Of Counsel:

Richard Q. Whelan, Esq.

---

[11]Subsequent to the alleged accident of November 8, 2002, and subsequent to defendant receiving notice of plaintiffs' claim, defendant effected remedial modifications to the arrangement of the access in question. During the period September 11-20, 2004, the access securing device was modified at a shipyard in Rotterdam in accordance with the design reflected in Plaintiffs' Exhibit P-I, which was prepared by independent naval architects. (Pls.' Ex. P-B, Mark Jansen Dep. pp. 34-42). During the period of October 2003 and February 2004, a portable handhold was added to the access. (Pls.' Ex. P-B, Mark Jansen Dep. pp. 26-32; Pls.' Ex. P-L). Defendant objects to Plaintiffs' reference to and use of these subsequent remedial measures in opposition to the within Motion on the grounds that said evidence is inadmissible under Fed. R. Evid. 407 and 403.