IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOHN TURNER and NANNETTE TURNER, | : : : |
| Plaintiffs, | : : |
| v. | :   Civil Action No. 04-936-JJF |
| B.V. SHIPPING COMPANY LUZON STRAIT (GRONINGEN) | : : : |
| Defendant. | : |

**MEMORANDUM ORDER**

Pending before the Court is Defendant's Motion For Summary Judgment (D.I. 40). For the reasons discussed, the Motion will be denied.

**I.   Background**

As required by the case law, the following facts are presented in the light most favorable to Plaintiffs. Defendant's ship, the M/V Luzon Strait contains four hatches, numbered 1 through 4, which start at the front of the ship. The hatches contain four decks, labeled A through D, which are accessed through "access hatches" located at the aft and forward ends of each level. The forward access hatch in hatch 2C is centrally located and is secured in an open position by a "hook and eye" contraption. The hook is welded to the hatch lid, and the eye is welded to the frame of the hatch. When the forward access hatch is open, the hook and eye contraption cannot be seen by those climbing into and out of the access hatch. Additionally, there is no handhold to use when ascending and descending through the

access hatch.  The aft access hatch is located in a separate compartment behind a bulkhead and is secured open by connecting the handle to a hook, which is welded onto a pole.  The aft access hatch has a handhold welded to the deck to assist in ascending and descending through the hatch.

On November 8, 2002, Plaintiff, John Turner, a longshore worker for the Delaware River Stevedores ("Stevedores"), and his co-workers unpacked pallets of frozen meat aboard the M/V Luzon Strait.  When they finished unpacking the meat, they left through the forward access hatch from level 2D to 2C.  As the workers had done all day, Mr. Turner exited by climbing the ladder and grabbing the hatch lid for support.  The hatch lid came loose, falling on Mr. Turner and injuring him.  Another worker lifted the lid off of Mr. Turner and attempted to re-secure the hatch lid, but found that the hook was deformed and no longer fit in the eye.

The door to the forward access hatch in hatch 2C had been opened and secured earlier in the day by the crew members from the ship before any unpacking.  No one had informed the Stevedores that the workers could use the aft access hatch instead of the forward access hatch.

**II.  Parties' Contentions**

By its Motion, Defendant contends that summary judgment is appropriate because a ship owner cannot be held liable for a

2

ship's unseaworthiness or defects in a vessel's structural design. Defendant further contends that it has not acted negligently or breached any of the limited duties a ship owner owes to longshore workers. While Plaintiffs acknowledge that Defendant cannot be held liable for unseaworthiness or defects in structural design, Plaintiffs contend that Defendant acted negligently and breached its turnover and active control duties.

### III. Legal Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In determining whether there is a triable dispute of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976). However, a court should not make credibility determinations or weigh the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). To properly consider all of the evidence without making credibility determinations or weighing the evidence, a "court should give credence to the evidence favoring

the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Id. at 151.

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). However, the mere existence of some evidence in support of the nonmovant will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmovant on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Thus, "if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. (citations omitted).

**IV. Discussion**

Section 5(b) of the Longshoremen's and Harbor Worker's Compensation Act ("LHWCA") provides:

> In the event of injury to a person covered under this Act caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party....The liability of the vessel under this section shall not be based upon the warranty

>of seaworthiness or a breach thereof at the time the
>injury occurred.

33 U.S.C. § 905(b). This statute is the result of a 1972 amendment to the LHWCA, which eliminated ship owners' strict liability for injury to longshore workers and replaced it with liability for negligence. Davis v. Portline Transportes Mar. Internacional, 16 F.3d 532, 536 (3d Cir. 1994). Under the negligence theory, there are three general duties that are owed to longshore workers:

>The first, which courts have come to call the "turnover duty" relates to the condition of the ship upon the commencement of stevedoring operations. The second duty, applicable once stevedoring operations have begun, provides that a shipowner must exercise reasonable care to prevent injuries to longshoremen in areas that remain under the "active control of the vessel." The third duty, called the "duty to intervene," concerns the vessel's obligations in areas under the principal control of the independent stevedore.

Howlett v. Birkdale Shipping Co., 512 U.S. 92, 98 (1994) (citing Scindia Steam Navigation Co., Ltd. v. De Los Santos, 451 U.S. 156 (1981))(citations omitted).

Plaintiffs contend that Defendant violated its turnover active control duties, and therefore, the Court will consider only these duties in relation to Defendant's Motion. Consistent with its initial burden on summary judgment, Defendant has set forth the basis for its Motion and contends that Plaintiffs have not come forward with specific facts showing that there is a genuine issue for trial.

A.  <u>Whether Summary Judgment Is Appropriate As To Plaintiffs' Claim That Defendant Breached Its Turnover Duty</u>

The turnover duty consists of two parts: "'both a duty to provide safe conditions and a corollary duty to warn of known, nonobvious hazards' in instrumentalities and areas 'turned over' to the stevedore's control." <u>Serbin v. Bora Corp.</u>, 96 F.3d 66 (3d Cir. 1996). Under the duty to provide safe conditions, the ship owner must exercise ordinary care to ensure that the ship and its equipment are in safe condition and that the stevedore is able to safely conduct its business on the ship. <u>Scindia Steam Navigation Co.</u>, 451 U.S. at 167. The duty to warn requires the ship owner to warn the stevedore of any hazards on the ship that are known or should be known and which the stevedore and its employees are likely to encounter. <u>Id</u>. at 167. Both of these duties apply "only at the moment the vessel initially turns control of the ship over to the stevedore." <u>Davis</u>, 16 F.3d at 537.

If a hazard is obvious to the stevedore, with some exceptions, the vessel will not be liable. <u>Jackson v. Egyptian Navigation Co.</u>, 364 F.3d 113, 117 (3d Cir. 2004). "The duty attaches only to latent hazards, defined as hazards that are not known to the stevedore and that would be neither obvious to nor anticipated by a skilled stevedore in the competent performance of its work." <u>Howlett</u>, 512 U.S. at 105. The exceptions to this

rule are where the hazard is "obvious yet practically unavoidable," where a stevedore cannot reasonably be expected to avoid a hazard, and where the ship owner should know that longshore workers typically confront, rather than avoid, the hazard. Kirsch v. Plovidba, 971 F.2d 1026, 1030-31 (3d Cir. 1992).

The Court concludes that a reasonable jury could find that Defendant violated its turnover duty. Plaintiffs contend that Defendant violated its turnover duty by negligently turning the ship over without an adequate securing device for the hatch and without a handhold to support the longshore workers who had to climb through the hatch. In support of this contention, Plaintiffs offer the deposition of Captain Mobach, who had familiarized himself with the vessel prior to delivery of the ship's contents. D.I. 46 at 5. Plaintiffs contend that being familiar with the ship, Captain Mobach knew what type of securing devices were being used to hold the hatches open and that the hatch from 2C to 2D lacked a handhold. Id. at 5-6. If Captain Mobach were aware of these things, a jury could reasonably find that the vessel was aware or should have been aware of these hazards, and therefore, should have warned the stevedore. Howlett, 512 U.S. at 105-06 (finding that knowledge of certain crew members could be attributed to the vessel).

The Court also concludes that it cannot resolve this case on

7

summary judgment based upon the obviousness of the hazard. This is in part because obviousness is rarely an issue that should be decided on summary judgment. Kirsch, 971 F.2d at 1033. Additionally, a reasonable jury could conclude that the hazard was not obvious or that even if it were, it falls within one of the exceptions to obviousness. Plaintiffs have offered evidence that the hook and eye were hidden behind the lid of the access hatch, where those going in and out of the hatch could not see them. D.I. 46 at 6. Plaintiffs have also offered evidence that the aft access hatch was located away from view in a separate compartment behind a bulkhead. Id. at 4.

Defendant objects to the use of Plaintiffs' expert's affidavit on summary judgment. D.I. 50 at 10-15. The Court will not, at this juncture, decide whether the expert's affidavit is admissible or inadmissible, but the Court does conclude that it is appropriate to consider the affidavit for purposes of summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)(finding that evidence produced at summary judgment did not have to be admissible in court and that Rule 56 permits those materials listed in the Rule, including affidavits). While part of the report may be helpful on summary judgment, the Court concludes that consideration of the report is not necessary to the Court's determination here because Plaintiffs have put forth enough evidence on the issues to avoid summary judgment.

Accordingly, the Court will deny Defendant's Motion For Summary Judgment on Plaintiffs' claim that Defendant breached its turnover duty.

    B.    <u>Whether Summary Judgment Is Appropriate As To Plaintiffs' Claim That Defendant Breached Its Active Control Duty</u>

The active control duty requires the vessel "not to take negligent actions in areas under its control that threaten the longshoremen's safety." <u>Serbin</u>, 96 F.3d at 70. Control is established by demonstrating that the vessel was in charge of the hazardous area, the dangerous instrumentality, or the activities undertaken by the stevedore. <u>Davis</u>, 16 F.3d at 540. A prima facie violation of the active control duty may be established by showing:

> (1) that the vessel appreciated, should have appreciated, or with the exercise of reasonable care would have appreciated, the condition; (2) that the vessel knew, or should have known, that the condition posed an unreasonable risk of harm to a longshore worker; (3) that a longshore worker foreseeably might fail to (i) either discover the condition or apprehend the gravity and probability of harm, or (ii) protect himself or herself against the danger; and (4) that the vessel failed to take reasonable precautionary or remedial steps to prevent or eliminate the dangerous condition.

<u>Id</u>. at 541.

Obviousness is also a bar to recovery under the active control duty. A hazard is obvious "if a reasonable longshore worker under all the circumstances would actually have noticed

the hazardous condition exists and have actually...appreciated the true significance...of the threatened harm." Davis, 16 F.3d at 543. With the active control duty, however, courts are even more cautious with the obviousness determination than they are with the turnover duty and will usually find that an obviousness determination is one for the jury. Id. at 545 (discussing how disposing of the case on summary judgment based on obviousness would allow the introduction of contributory negligence and assumption of the risk where the fault determination was purely comparative).

The Court concludes that a reasonable jury could find that Defendant violated its active control duty. Plaintiffs contend that Defendant violated this duty by opening and securing the forward access hatch, thereby hiding the securing device, and failing to inform the longshore workers of the aft access hatch. Plaintiffs have put forth evidence that the crew members opened the hatch for the longshore workers on November 8, 2002. D.I. 46 at 9. Because control can be demonstrated through active intervention in an area, Davis, 16 F.3d at 541, the Court concludes that a reasonable jury could find that the vessel exercised control over the hazardous condition.

Additionally, Plaintiffs have adduced evidence on each element of the prima facie case showing a violation of the active control duty. Plaintiffs have preliminarily established that

10

Defendant appreciated or should have appreciated the unreasonable risk to the longshore workers because Captain Mobach was aware of the securing devices and the absence of a handhold. D.I. 46 at 5-6. The evidence further shows that Defendant's crew opened the hatch in the morning, and thus, should have been aware of any problems associated with the securing device and the lack of a handhold. Id. at 9. Plaintiffs have also demonstrated that it was foreseeable that the longshore workers would fail to discover the hazard or protect themselves. The securing device was hidden behind the hatch lid, and therefore, according to Plaintiffs, was not visible to the longshore workers. Id. at 4. Finally, Plaintiffs have produced evidence that Defendant failed to take precautionary or remedial steps. Defendant did not install temporary handholds or direct the longshore workers to use the aft access hatch until after the accident. Id. at 6-7. Accordingly, the Court will deny Defendant's Motion For Summary Judgment on Plaintiffs' claim that Defendant breached its turnover duty.

**ORDER**

NOW THEREFORE IT IS HEREBY ORDERED this __3__ day of November 2005, that Defendant's Motion For Summary Judgment (D.I. 40) is **DENIED**.

_____
UNITED STATES DISTRICT JUDGE